PEOPLE v RUSSO

Docket No. 90088. Argued November 6, 1991 (Calendar No. 6). Decided June 2, 1992.

Salvatore Russo was charged in the Kent Circuit Court with three counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct involving a child under the age of thirteen. The court, Dennis C. Kolenda, J., granted the defendant's motions to suppress certain evidence seized in his home pursuant to a warrant and to dismiss the charges, finding that the amended statute of limitations could not be applied to crimes committed before its effective date, and that the information supporting probable cause to search was stale. The Court of Appeals, Hood, P.J., and D. E. Holbrook, Jr., and Neff, JJ., affirmed in part and reversed in part, holding that the amended statute of limitations applies to offenses not barred on the effective date of the act, and that because the passage of time negated an inference of probable cause, the search warrant was defective and the resulting seizure illegal (Docket No. 118821). Both parties appeal.

In an opinion by Justice Boyle, joined by Justices Riley, Griffin, and Mallett, the Supreme Court held:

The extended period of limitation for prosecution of criminal sexual conduct involving a minor applies to formal charges of offenses not barred on the effective date of the statute filed after its effective date. Such an application is not a violation of the Ex Post Facto Clauses of the United States and Michigan Constitutions. In this case, the supporting affidavit provided the magistrate a substantial basis to conclude that there was probable cause to believe that the evidence to be seized would be found in the place to be searched.

1. Neither ex post facto analysis nor application of the general statute of limitations requires dismissal. The amendment of MCL 767.24(2); MSA 28.964(2) by 1987 PA 255 ex-

References

Am Jur 2d, Assault and Battery §§ 24-27, 41-42, 65; Searches and Seizures §§ 1-6, 41-44, 60-62.

See the Index to Annotations under Assault and Battery; Children; Search and Seizure; Sex and Sexual Matters.

tended the period of limitation for prosecution of charges of criminal sexual conduct involving a victim under eighteen years of age. While Ex Post Facto Clauses secure substantial personal rights against arbitrary and oppressive legislation, they do not limit legislative control of remedies and procedures not affecting matters of substance. Applying the extended statute of limitations does not violate the Ex Post Facto Clauses because the sexual assaults were not innocent when committed, the quantum of punishment is unchanged, and the defendant has not been deprived of any defense available to him at the time the acts were committed. The statute of limitations defense was not available to the defendant at the time the assaults were committed or at the time the amendment became effective.

2. A new or amended statute generally applies prospectively unless an intention to give it retrospective effect is expressly indicated or may be inferred or where a statute is remedial or procedural in nature. Statutes that operate in furtherance of a remedy already existing and that neither create new rights nor destroy rights already existing operate retrospectively absent a contrary intent. Statutes of limitation do not derive from the common law, but developed from public policy and are acts of legislative will. There is no vested right in the running of a statute of limitation except where it has completely run and the action is barred. Statutes of limitations generally are regarded as procedural and not substantive in nature. Extending the length of time allowed to bring a criminal prosecution that is not barred is a procedural change and fails to alter either the rights of a defendant or any substantive elements of the crime charged.

3. A search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. The degree of probability required for issuance of a search warrant is not subject to numerical quantification. A magistrate must examine the totality of the circumstances to determine whether a fair probability exists that specific evidence of the crime will be found in a particular place and have a substantial basis for issuance of a warrant. A magistrate's finding that an affidavit establishes probable cause is entitled to deference. Appellate scrutiny of a magistrate's decision involves neither review de novo nor application of an abuse of discretion standard; the preference for warrants requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause.

4. In reviewing the finding of probable cause in this case, it

must be determined whether a reasonable magistrate could have found a substantial basis to infer that the evidence sought was still in the defendant's home six and one-half years after it was last seen. A threshold inquiry involves the life cycle of the evidence sought given the totality of the circumstances, including the criminal, the thing to be seized, the place to be searched, and, most significantly, the character of the criminal activities under investigation. It cannot be assumed that evidence of a crime will remain indefinitely in a given place. Thus, staleness is not a separate doctrine in analyzing probable cause to search; rather, it is merely an aspect of Fourth Amendment inquiry. Time as a factor must be balanced with variables such as whether the crime was a single instance or part of an ongoing pattern, whether the inherent nature of a scheme suggests that it probably is continuing, and whether the property sought likely would be disposed of or retained by the person committing the offense.

5. In this case, the search was not unreasonable. The affidavit recounted facts uncovered during the investigation that provided the magistrate a substantial basis to make an independent judgment that probable cause existed for a search and that there was a fair probability that the items sought would be present in the defendant's home.

Affirmed in part, reversed in part, and remanded.

Chief Justice CAVANAGH, joined by Justice BRICKLEY, concurring in part and dissenting in part, stated that the affidavit at issue was insufficient to establish probable cause to search the defendant's home. Some of its allegations are inconsistent and must be excluded. In addition, it contains no allegations that the defendant's conduct was part of a continuing pattern or that the police attempted to substantiate the victim's claims. Most significant is the absence of an indication that the items that were the objects of the search would be in the defendant's possession at the time of execution. Because the allegations were stale, the warrant should be quashed.

Justice LEVIN, dissenting, stated that 1987 PA 255, amending the statute of limitations for prosecutions of criminal sexual conduct where the victim is under the age of eighteen, is prospective, and extends the time for the commencement of prosecution only where the offense is committed after the effective date of the amendment. The Supreme Court has said that it is a sound rule of construction that legislation is to have a prospective operation only, except where the contrary intent is expressly declared or is necessarily to be inferred from the terms employed. A legislative intent to make this enlarged

period of limitation retrospective is neither expressly declared nor necessarily to be inferred from the terms employed.

185 Mich App 422; 463 NW2d 138 (1990) affirmed in part and reversed in part.

1. LIMITATION OF ACTIONS — CRIMINAL SEXUAL CONDUCT — MINORS.

The extended period of limitation for prosecution of criminal sexual conduct involving a minor applies to formal charges of offenses not barred on the effective date of the statute filed after its effective date (MCL 767.24[2]; MSA 28.964[2]).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS — PROBABLE CAUSE.

A search warrant and the underlying affidavit are to be read in a common-sense and realistic manner; the degree of probability required for issuance of a search warrant is not subject to numerical quantification; a magistrate must examine the totality of the circumstances to determine whether a fair probability exists that specific evidence of the crime will be found in a particular place and have a substantial basis for issuance of a warrant.

3. SEARCHES AND SEIZURES — SEARCH WARRANTS — STANDARD OF REVIEW.

Appellate scrutiny of a magistrate's decision to issue a search warrant involves neither review de novo nor application of an abuse of discretion standard; the preference for warrants requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause.

4. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — APPELLATE REVIEW.

In reviewing a finding of probable cause by a magistrate to issue a search warrant, a threshold inquiry involves the life cycle of the evidence sought given the totality of the circumstances, including the criminal, the thing to be seized, the place to be searched, and, most significantly, the character of the criminal activities under investigation; it cannot be assumed that evidence of a crime will remain indefinitely in a given place, and time as a factor must be balanced with variables such as whether the crime was a single instance or part of an ongoing pattern, whether the inherent nature of a scheme suggests that it probably is continuing, and whether the property sought likely would be disposed of or retained by the person committing the offense.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Helen V. Brinkman,* Assistant Prosecuting Attorney, for the people.

*Harold U. Smiley, Jr.,* for the defendant.

BOYLE, J. We granted leave in this case to determine whether the amended statute of limitations set forth in MCL 767.24(2); MSA 28.964(2) applies to the prosecution of a charge of criminal sexual assault involving a minor where the alleged acts were committed prior to, yet were not time-barred on, the effective date of the amendment. The prosecution's cross appeal was granted to answer the question whether the warrant authorizing the search of the defendant's home was supported by an affidavit establishing probable cause if the amended statute governs prosecution.

We find that the extended limitation period for criminal sexual conduct involving a minor was intended by the Legislature to apply to formal charges of offenses not time-barred on the effective date of the act filed after its effective date.[1] This application is not a violation of the Ex Post Facto Clauses of the United States and Michigan Constitutions.[2]

In response to the second question, we hold that the supporting affidavit provided the magistrate a substantial basis to conclude that there was probable cause to believe that the evidence to be seized would be found in the place to be searched.

---

[1] Michigan has adopted a dual system of charging by indictment or information. MCL 767.1; MSA 28.941. We treat the term indictment here as also referring to charges made by the filing of an information.

[2] US Const, art I, § 10, cl 1; Const 1963, art 1, § 10.

We affirm the decision of the Court of Appeals on the statute of limitations issue and reverse its decision on the search and seizure issue.

I

FACTS AND PROCEEDINGS

The defendant was charged with three counts of criminal sexual conduct in the first degree, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and three counts of criminal sexual conduct in the second degree, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). The counts involved one child victim under the age of thirteen.

On April 25, 1989, the Grand Rapids Police Department received information from the victim, then age sixteen, that over a four-year span between the time she was five and ten years old, she had been sexually assaulted by the defendant every other weekend. The assaults allegedly occurred between the fall of 1978 and August, 1982. On April 27, 1989, a warrant was issued for a search of the defendant's residence on the basis of an affidavit, the details of which are set forth below. An abundance of homemade and commercial child pornography tapes, sexually explicit photographs, pornographic magazines, sexual paraphernalia, video, television and camera equipment, letters, drawings, and a list of 192 children's names were seized during the execution of the search warrant. The evidence seized included sexually explicit videotapes and photographs of the victim.[3] As a result of the seizure, the defendant

_____

[3] A review of the seized videotapes enabled police officers to identify a second victim. The prosecutor conceded, however, that the last sexual assault on this child occurred in 1978 and that the limitation period had expired before the Legislature amended the statute of limitations. Accordingly, the charges against the defendant relating to the sexual assault of the second victim were dismissed.

was arrested on April 28, 1989, and charged with criminal sexual assaults of the child.

The statute of limitations in effect at the time of the alleged acts was six years. It is undisputed that, under the previous limitation period, the charges made would have been barred as of August, 1988. However, before the running of the then-applicable six-year period of limitation, the Legislature amended the statute. 1927 PA 175, as amended by 1987 PA 255, MCL 767.24(2); MSA 28.964(2), provides in part:

> Notwithstanding subsection (1), if an alleged victim was under 18 years of age at the time of the commission of the offense, an indictment for an offense under section 145c or 520b to 520g of the Michigan penal code, Act No. 328 of the Public Acts of 1931, being sections 750.145c and 750.520b to 750.520g of the Michigan Compiled Laws, may be found and filed within 6 years after the commission of the offense or by the alleged victim's twenty-first birthday, whichever is later.

The amendment became effective on March 30, 1988, five months before the previous statute of limitations would have expired.

The defendant filed a motion to suppress the evidence and to dismiss the charges, claiming that the action was barred by the statute of limitations and that the warrant was defective. The trial court granted both motions, agreeing that the amended statute could not be applied to crimes committed before its effective date and that the information supporting probable cause to search was "stale." The trial court ordered that the charges against the defendant be dismissed. The people appealed of right the trial court's rulings on the statute of limitations and the search and seizure issues, and the Court of Appeals reversed

in part and affirmed in part.[4] The Court held that the Legislature intended the amendment to apply to offenses not time-barred on the effective date of the act.[5]

Regarding the search and seizure issue, the Court of Appeals agreed that probable cause did not exist and affirmed the lower court's ruling that the search warrant was defective and the resulting seizure was illegal.

We granted the defendant's application for leave to appeal the statute of limitations issue, and the cross-application for leave to appeal the search and seizure issue. 437 Mich 925 (1991).

II

STATUTE OF LIMITATIONS

The Legislature amended the Code of Criminal Procedure to provide:

> [I]f an alleged victim was under 18 years of age at the time of the commission of the offense, an indictment for an offense . . . may be found and filed within 6 years after the commission of the offense or by the alleged victim's twenty-first birthday, whichever is later. [1987 PA 255, MCL 767.24(2); MSA 28.964(2).]

The prosecution asserts that the extended limitation period applies to those offenses that were committed before the amendment, but were not yet time-barred under the previous statute of limi-

[4] 185 Mich App 422; 463 NW2d 138 (1990).

[5] In *People v Chesebro*, 185 Mich App 412; 463 NW2d 134 (1990), a different panel of the Court of Appeals also held that MCL 767.24(2); MSA 28.964(2) applied to crimes committed before the amendment not time-barred on the effective date. The defendant in *Chesebro* appealed, and this Court held that case in abeyance pending our decision in the instant case.

tations.[6] The defendant contends that because the amendment does not specifically state that it applies to offenses arising before its effective date, the amendment is not applicable. The defendant also submits that the rules of statutory construction and the prohibition against ex post facto laws[7] proscribe its application to this case. Dealing with the claims in inverse order, we hold that neither ex post facto analysis nor application of the general statute of limitations requires dismissal.

The United States Supreme Court has consistently held that the Ex Post Facto Clause, US Const, art I, § 10, cl 1, was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit legislative control of remedies and procedure that do not affect matters of substance.[8] In *Dobbert v Florida,* 432 US 282, 292-293; 97 S Ct 2290; 53 L Ed 2d 344 (1977), the Court stated:

> "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."
>
> * * *
>
> Even though it may work to the disadvantage of

[6] The people do not contend that the extended statute of limitations may revive offenses that were barred at the time the amended statute became effective.

[7] US Const, art I, § 10, cl 1 provides that "No State shall . . . pass any Bill of Attainder, ex post facto Law . . . ."
Const 1963, art 1, § 10 provides that "No bill of attainder, ex post facto law . . . shall be enacted."

[8] See *Collins v Youngblood,* 497 US 37; 110 S Ct 2715; 111 L Ed 2d 30 (1990); 16A Am Jur 2d, Constitutional Law, § 646, pp 607-609; 16A CJS, Constitutional Law, §§ 420-421, pp 372-374.

a defendant, a procedural change is not ex post facto. For example, in *Hopt v Utah,* 110 US 574 [4 S Ct 202; 28 L Ed 262] (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness. Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. *Id.* at 589.

An enactment will not escape a court's scrutiny under the Ex Post Facto Clause merely because a legislature has given it a procedural label. However, legislation will not be found violative of the clause simply because it works to the disadvantage of the defendant.[9]

Well-settled principles require the conclusion that applying the extended statute of limitations to the then-not-yet-time-barred alleged sexual assaults is not ex post facto. The sexual assaults were not innocent when committed, the quantum of punishment is unchanged, and the defendant has not been deprived of any defense available to him at the time the acts were committed. The statute of limitations defense was not available to the defendant at the time the assaults were committed or at the time the amendment became effective. The Legislature amended the statute of limitations five months before the defendant had any substantive right to invoke its protection. The statute of limitations defense remained available

---

[9] *Collins,* n 8 *supra* at 45.

to the defendant after the amendment, just as it did immediately before the amendment went into effect.

Therefore, finding no violation of the Ex Post Facto Clause, we turn to the issue of legislative intent.

The general rule of statutory construction in Michigan is that a new or amended statute applies prospectively unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect.[10] This rule applies equally to criminal statutes.[11] However, an exception to the general rule is recognized where a statute is remedial or procedural in nature. Statutes that operate in furtherance of a remedy already existing and that neither create new rights nor destroy rights already existing are held to operate retrospectively unless a different intention is clear.[12]

Historically, there was no limitation period on the prosecution of common-law crimes. Statutes of limitation develop out of public policy and are acts of legislative will. There is no vested right in the running of a statute of limitation except when it has completely run and the action is barred. *In re Straight Estate,* 329 Mich 319, 325; 45 NW2d 300 (1951). A statute of limitation "shelter has never been regarded as what now is called a 'fundamental' right . . . [h]e may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."[13]

---

[10] *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984).

[11] *People v Osteen,* 46 Mich App 409, 413; 208 NW2d 198 (1973), lv den 390 Mich 760 (1973).

[12] *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 485; 124 NW2d 286 (1963).

[13] *Chase Securities Corp v Donaldson,* 325 US 304, 314; 65 S Ct

In Michigan, statutes of limitations are generally regarded as procedural and not substantive in nature. *Lothian v Detroit,* 414 Mich 160, 166; 324 NW2d 9 (1982); *Forest v Parmalee,* 402 Mich 348, 359; 262 NW2d 653 (1978).[14] This concept also has been applied to changes in criminal procedure. *People v Foster,* 261 Mich 247, 255; 246 NW 60 (1933).[15] Extending the length of time allowed to bring a criminal prosecution that is not time-barred is a procedural change and fails to alter either the rights of a defendant or any substantive elements of the crime charged.

Ultimately, however, we rely not on the specific rules of statutory construction, which are merely aids to interpretation, but, rather, as Chief Justice RILEY observed in *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989), we look to "the object of the statute, the harm which it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose." We are persuaded that the charge made here is not time-barred by what we perceive as the clear protective purpose and a reasonable construction of the language of this amendment.[16]

The legislative goal in enacting the criminal

1137; 89 L Ed 1628 (1945). See also 21 Am Jur 2d, Criminal Law, § 224, pp 410-411; 22 CJS, Criminal Law, § 197, pp 242-243.

[14] The general rule may not apply when a new statute abolishes an existing cause of action. *In re Certified Questions,* 416 Mich 558; 331 NW2d 456 (1982).

[15] Although one principle of *Foster* not on point here was later overruled, *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), we have not retreated from the proposition that changes in criminal procedure may be retroactively applicable.

[16] Amendments of an existing statute may expand or restrict its regulation but must be read with consistency of purpose. 2A Sands, Sutherland Statutory Construction (5th ed), § 45.10, pp 46-48. 1987 PA 255 expressly amended the statute of limitations governing § 145c and §§ 520b to 520g of the Penal Code, 1931 PA 328. Thus, the amending act became part of the criminal sexual conduct statute. The amended statute of limitations, then, must be read consistently with the purpose of the criminal sexual conduct statute.

sexual conduct statute, MCL 750.520a *et seq.*; MSA
28.788(1) *et seq.,* was to clarify definitions relating
to criminal sexual conduct to delineate precisely
the conduct proscribed and to remove major obsta-
cles in the reporting and prosecution of sexual
assaults. *People v Johnson,* 406 Mich 320, 327, 330;
279 NW2d 534 (1979). Similarly, the obvious pur-
pose for lengthening the statute of limitations in
sexual crimes involving minors was to provide
added protection to such victims. The Senate Bill
Analysis observed that frequently the six-year lim-
itation has run by the time the child speaks out,
thereby making prosecution impossible.[17] Thus, the
legislative purpose in enacting both the original
criminal sexual conduct statute and the extended
limitations amendment for children was to facili-
tate the prosecution of such offenses.

The apparent purpose of the amendment is to
extend protection to a class of presently existing
victims, a purpose confirmed by a comparison of
the language in the general statute of limitations
with that in the subsection extending the limita-
tion period. The statute of limitations in MCL
767.24(1); MSA 28.964(1), expressly states that
"[e]xcept as otherwise provided in subsection (2),
all other indictments shall be found and filed
within 6 years after the commission of the of-
fense." Subsection (2) provides:

> Notwithstanding subsection (1), if an alleged
> victim *was* under 18 years of age at the time of the
> commission of the offense, an *indictment* for an
> offense . . . may be found and filed within 6 years
> after the commission of the offense or by the
> alleged victim's twenty-first birthday, whichever is
> later. [Emphasis added.]

Thus, while the general perspective of the statute

---

[17] Senate Bill Analysis, SB 430, November 4, 1987.

of limitations looks forward from the time the offense is committed, the amendment looks backward, and requires inquiry whether the victim was under eighteen years at the time the offense "was" committed. The purpose as well as the words of the statute indicate that the amendment applies to victims who were under eighteen years at the time of the offense.

In sum, no reason has been advanced persuading us that the Legislature's purpose to remedy what it saw to be a serious problem was to be reserved to crimes not yet committed. As this Court long ago observed in another context, to give the amended statute of limitations solely prospective effect, would render "this section . . . useless and the effective date of the act would be postponed 30 years. We do not think that such a result was the intention of the legislature . . . ." *Austin v Anderson,* 279 Mich 424, 428; 272 NW 730 (1937).[18]

We affirm the decision of the Court of Appeals.[19]

---

[18] Judge Learned Hand, while on the United States Court of Appeals for the Second Circuit, aptly summarized in *Falter v United States,* 23 F2d 420, 425-426 (CA 2, 1928), cert den 277 US 590 (1928), our conclusion when he stated:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.

[19] In so ruling, we align ourself with the majority of state and federal jurisdictions which have confronted the applicability of extended criminal statute of limitation periods and have resolved the issue in favor of affecting cases not already time-barred without violation of the Ex Post Facto Clause. *Falter v United States,* n 18 *supra; United States ex rel Massarella v Elrod,* 682 F2d 688 (CA 7, 1982), cert den 460 US 1037 (1983); *Clements v United States,* 266 F2d 397 (CA 9, 1959), cert den 359 US 985 (1959); *State v Creekpaum,* 753 P2d 1139 (Alas, 1988); *People v Sample,* 161 Cal App 3d 1053; 208 Cal

### III

#### SEARCH AND SEIZURE

The warrant was supported by an affidavit stating that the victim reported that, while between the ages of five and ten years old, she had been sexually abused by the defendant at his home every other weekend over a four-year period, beginning in the fall of 1978 and ending in August, 1982; the victim described being photographed by the defendant "naked or in various stages of undress" and having been videotaped alone or with the defendant involved in sexual activity; and she reported being shown the photographs and videotapes numerous times by the defendant during her visits to his home, and that she was familiar with the different locations within the home where the defendant stored the material and his method of securing the piles of photographic material with "string or rubber bands."

The Court of Appeals upheld the trial court's finding that the search warrant was defective and that the evidence seized must be suppressed in essence because the passage of time negated an inference of probable cause. For the reasons that follow, we reverse the decision of the Court of Appeals.[20]

---

Rptr 318 (1984); *Holland v Douglas Co Dist Ct,* 831 F2d 940 (CA 10, 1987), cert den 485 US 977 (1988); *Marks v State,* 581 So 2d 1182 (Ala Crim App, 1990); *Scharfschwerdt v Kanarek,* 553 So 2d 218 (Fla App, 1989), lv den 563 So 2d 633 (1990); *State v Nunn,* 244 Kan 207; 768 P2d 268 (1989); *Commonwealth v Bargeron,* 402 Mass 589; 524 NE2d 829 (1988); *State v Casaretto,* 818 SW2d 313 (Mo App, 1991); *State v Nagle,* 226 NJ Super 513; 545 A2d 182 (1988); *State v O'Neill,* 118 Idaho 244; 796 P2d 121 (1990); *Commonwealth v Johnson,* 520 Pa 165; 553 A2d 897 (1989); *State v Petrucelli,* 592 A2d 365 (Vt, 1991); *State v Hodgson,* 108 Wash 2d 662; 740 P2d 848 (1987), cert den 485 US 938 (1988).

[20] The prosecution raises for the first time the good-faith exception to uphold an invalid search warrant which was enunciated in *United*

A

Attendant to the emergence of sexual exploitation of children as a crime of previously unknown proportion,[21] inquiry regarding the life cycle of child pornography has been addressed by extensive investigation of the subject. In 1984, a study by a subcommittee of the United States Senate,[22] evaluated thousands of documents, the results of numerous personal interviews, and testimony at public hearings and concluded that pornography plays a central role in child molestation.[23] The documents examined were arrest reports, victim statements, pedophile[24] correspondence, newsletters, child pornography catalogs, films, videotapes and magazines. More than two hundred people were interviewed, including convicted child molesters, por-

States v Leon, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984). The issue was not raised in the lower courts or in the prosecution's application for leave to appeal. Therefore, pursuant to MCR 7.302(F)(4)(a), the issue is not properly before this Court.

[21] The Department of State Police reported that in Michigan in 1990, there were 2,743 known victims of sexual contact or penetration between the ages of zero and nine, and 3,938 known victims of sexual contact or penetration between ten and nineteen years of age. *Michigan Department of State Police Victimization Report—1990.* However, researchers indicate that the incidence of child sexual exploitation may be five to ten times greater than reported. Burgess, *Child Pornography and Sex Rings* (Lexington, Mass: DC Heath & Co, 1984), p 1.

[22] The Permanent Subcommittee on Investigations of the Committee on Governmental Affairs, United States Senate, reported that the extraordinary rise in child sexual abuse statistics reflect increased efforts to discover and investigate such crimes, rather than a sudden increase in the molestation of children. S Rep No 99-537, 99th Cong (2nd Sess), *Child pornography and pedophilia,* p 2 (hereinafter Report).

[23] Report, n 22 *supra* at 4.

[24] The term pedophile is defined as a preferential child molester whose major characteristics include "1) [a] long-term and persistent pattern of behavior, 2) children as preferred sexual objects, 3) well-developed techniques in obtaining victims, and 4) sexual fantasies focusing on children." Lanning, *Child Molesters: A Behavioral Analysis* (Quantico, Va: National Center for Missing & Exploited Children, 1987), p 11.

nographers, pro-pedophilia activists, molestation victims, investigators, judges, prosecutors, psychiatrists, and child protection workers. The subcommittee determined in relevant part that the collection and retention of such items is a recurring pattern for some persons whose sexual gratification is obtained through and with children.

Pornography functions for this offender as a method of justification that the behavior is not abnormal, serving not only as a means of contact with others of like interest but as reinforcement for the belief that, because so many others engage in the same activity, it must not be as wrong as society believes. These offenders are frequently victims of child sexual abuse themselves and combat negative feelings of their own victimization by regarding their sexual offenses as an expression of caring for children, rather than the using of their victims to meet personal unsatisfied needs.[25]

The committee evaluated the phenomena of exhibiting child pornography that we have observed in record review of cases in our own jurisprudence, see, e.g., *People v Engelman,* 434 Mich 204; 453 NW2d 656 (1990); *People v Sundling,* 153 Mich App 277; 395 NW2d 308 (1986), lv den 428 Mich 887 (1987); *People v Osborn,* 122 Mich App 63; 329 NW2d 533 (1982), concluding that pornography is used in connection with child molestation, for arousal and fantasy and as a means of lowering the intended victim's inhibitions through peer pressure effects. The committee's findings suggest that a reluctant child can sometimes be convinced to engage in sexual activity by viewing other children having "fun" in the activity,[26] and that

[25] Groth, Hobson & Gary, *The Child Molester: Clinical Observations,* Social Work and Child Abuse (Haworth Press, Inc., 1982), pp 138-139.

[26] Report, n 22 *supra* at 10. See also *Osborne v Ohio,* 495 US 103, 111, n 7; 110 S Ct 1691; 109 L Ed 2d 98 (1990) (citing 1 *Attorney*

for offenders whose sexual preference is children, photographs guarantee that there will always be an image of the child at the age of sexual preference because the photograph preserves the child's youth forever. The retention of the photographs may also serve to ensure that the child keeps the secret, thereby permitting the offender to continue molesting children, and as a medium of exchange with other pedophiles in order to gain access to other child victims.[27] Finally, on a smaller scale, child pornography is used for sale and profit.[28]

The subcommittee's findings document the basis for the common-sense inference that the life cycle of child pornography may be extensive. The subcommittee concluded that the single most persuasive characteristic of pedophilia is the obsession for, and the collection of, child pornography.[29] As one of the leading experts on child molestation testified:

"They (pedophiles) typically collect books, magazines, articles, newspapers, photographs, negatives, slides, movies, albums, drawings, audio tapes, videotapes, personal letters, diaries, sexual aids, souvenirs, toys, games, lists, paintings, ledgers, etc., all relating to children in either a sexual, scientific or social way. Not all pedophiles collect all these items. Their collections vary in size and scope. However, the maintenance and growth of their collections becomes one of the most important things in their life. . . . They may hide their collections, move them, or even give them to an-

General's Commission on Pornography, Final Report [1986], p 649;' Campagna & Poffenberger, Sexual Trafficking in Children [1988], p 118; O'Brien, Child Pornography [1983], p 89), and Tyler & Stone, Child pornography: Perpetuating the sexual victimization of children, 9 Child Abuse & Neglect 313, 316-317 (1985).

[27] Report, n 22 supra at 11.

[28] Id.

[29] Id. at 9.

other pedophile, *but they almost never destroy them.*"[30] [Emphasis added.]

**B**

We review the magistrate's decision under the standard adopted in *People v Landt,* 439 Mich 870 (1991). The Court of Appeals in *Landt* noted that there was a split of authority concerning the applicable standard of review for the issuance of a search warrant. 188 Mich App 234, 240; 469 NW2d 37 (1991). Some panels of the Court of Appeals followed the "abuse of discretion" standard, according deference to the magistrate's decision.[31] Other panels followed the "substantial basis" standard articulated in *People v Gleason,* 122 Mich App 482, 489; 333 NW2d 85 (1983), which, while recognizing that "a magistrate's finding that an affidavit establishes probable cause is entitled to deference in marginal cases," essentially embraced de novo review of a magistrate's decision.[32]

Using the standard of review set forth in *Gleason,* the Court of Appeals held in *Landt* that the facts in the affidavit were sufficient to establish probable cause to search for the delivered contra-

[30] *Id.* at 9-10, quoting Lanning's testimony in front of the Subcommittee on Juvenile Justice, United States Senate. See also Campagna & Poffenberger, n 26 *supra* at 30-31.

[31] See *People v White,* 167 Mich App 461; 423 NW2d 225 (1988); *People v Goins,* 164 Mich App 559; 417 NW2d 499 (1987); *People v Queenan,* 158 Mich App 38; 404 NW2d 693 (1987), cert den 484 US 1076 (1988); *People v Sundling, supra; People v Reed,* 121 Mich App 286; 329 NW2d 23 (1982); *People v Dinsmore,* 103 Mich App 660; 303 NW2d 857 (1981); *People v Heiler,* 97 Mich App 636; 296 NW2d 10 (1980); *People v Atkins,* 96 Mich App 672; 293 NW2d 671 (1980); *People v Price (On Remand),* 91 Mich App 328; 283 NW2d 736 (1979); *People v Thomas,* 86 Mich App 752; 273 NW2d 548 (1978).

[32] See *People v Jackson (On Remand),* 180 Mich App 339; 446 NW2d 891 (1989); *People v Kort (On Remand),* 162 Mich App 680; 413 NW2d 83 (1987); *People v Williams,* 139 Mich App 104; 360 NW2d 585 (1984); *People v Gentry,* 138 Mich App 225; 360 NW2d 863 (1984); *In re Search Warrant on 5000 Northwind Dr,* 128 Mich App 564; 341 NW2d 141 (1983).

band, but were not sufficient to establish probable cause to search for other evidence of drug trafficking.[33] This Court unanimously reversed, adopting the standard of review set forth in *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983).[34] We stated:

> Search warrants and the underlying affidavits are to be read in a common-sense and realistic manner. . . . Inasmuch as the affidavit underlying the search warrant in this case established probable cause as to the contraband that was delivered to the defendant at the address where the search warrant was executed, the magistrate did not err in finding probable cause as to other items incident to drug trafficking.

Thus, appellate scrutiny of a magistrate's decision involves neither de novo review nor application of an abuse of discretion standard. Rather, the preference for warrants set forth in *Gates, supra,* *United States v Ventresca,* 380 US 102; 85 S Ct 741; 13 L Ed 2d 684 (1965), and *Brinegar v United States,* 338 US 160; 69 S Ct 1302; 93 L Ed 1879 (1949), requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a "substantial basis" for the finding of probable cause. In *Gates* at 236-237, the Court held:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit

[33] *Landt,* 188 Mich App 241. The affidavit stated that the affiant police officer had experience and specialized training in the recognition of controlled substances and the paraphernalia associated with the controlled substances, as well as such transactions. On the basis of his experience and training as a narcotics enforcement team investigator, the affiant believed that additional evidence of drug trafficking would be found in the home along with the delivered contraband.

[34] *Landt,* 439 Mich 870.

should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." "A grudging or negative attitude by reviewing courts toward warrants," is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."

. . . [T]he traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable-cause determinations of magistrates than is the "two-pronged test." [Citations omitted.]

In sum, a search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates* at 238.

C

We turn then to the crux of the inquiry in this case, the difficult question of the degree of certainty that "probable cause" requires. Specifically, we must determine whether a reasonable magistrate could have found a substantial basis to infer that the evidence sought was still in the defendant's home six and one-half years after it was last

seen. The answer to the question turns on whether
"it [is] necessary that the particular matter under
consideration (i.e., that a crime has been commit-
ted, that a particular person has committed it,
that evidence of crime is to be found in a particu-
lar place, or that a particular object is evidence of
crime) be more probable than not, or [that] some-
thing short of this [will] suffice." 1 LaFave, Search
and Seizure (2d ed), § 3.2(e), p 587.

The threshold inquiry looks at the life cycle of
the evidence sought, given a totality of circum-
stances, that includes the criminal, the thing
seized, the place to be searched, and, most signifi-
cantly, the character of the criminal activities
under investigation. 2 LaFave, Search and Seizure
(2d ed), § 3.7(a), pp 75-87.

Probable cause to search is concerned with
whether certain identifiable objects "are probably
to be found at the present time in a certain
identifiable place." 2 LaFave, *supra*, § 3.7, p 75.
Once established, probable cause to arrest, which
is concerned with historical facts, is likely to con-
tinue indefinitely, absent the discovery of contrary
facts. By contrast, it cannot be assumed that evi-
dence of a crime will remain indefinitely in a
given place. Thus, "staleness" is not a separate
doctrine in probable cause to search analysis. It is
merely an aspect of the Fourth Amendment in-
quiry.

Time as a factor in the determination of proba-
ble cause to search is weighed and balanced in
light of other variables in the equation, such as
whether the crime is a single instance or an
ongoing pattern of protracted violations, whether
the inherent nature of a scheme suggests that it is
probably continuing, and the nature of the prop-
erty sought, that is, whether it is likely to be
promptly disposed of or retained by the person

committing the offense. *People v Sundling, supra*
at 286. See also 2 LaFave, *supra,* § 3.7(a), pp 78-87.
The matter must be determined by the circum-
stances of each case. *People v Smyers,* 47 Mich
App 61, 73; 209 NW2d 281 (1973), aff'd 398 Mich
635; 248 NW2d 156 (1976); *Sgro v United States,*
287 US 206; 53 S Ct 138; 77 L Ed 260 (1932); 2
LaFave, § 3.7(a), p 77.

Accordingly, Professor LaFave quotes approv-
ingly *Andresen v Maryland:*

> The likelihood that the evidence sought is still
> in place is a function not simply of watch and
> calendar but of variables that do not punch a
> clock: the character of the crime (chance encoun-
> ter in the night or regenerating conspiracy?), of
> the criminal (nomadic or entrenched?), of the
> thing to be seized (perishable and easily transfera-
> ble or of enduring utility to its holder?), of the
> place to be searched (mere criminal forum of
> convenience or secure operational base?), etc. The
> observation of a half-smoked marijuana cigarette
> in an ashtray at a cocktail party may well be stale
> the day after the cleaning lady has been in; the
> observation of the burial of a corpse in a cellar
> may well not be stale three decades later. The
> hare and the tortoise do not disappear at the same
> rate of speed.[35] [See 2 LaFave, *supra,* § 3.7(a), pp
> 77-78.]

**D**

It is settled law that probable cause to search
must exist at the time the search warrant is
issued, *Sgro v United States, supra* at 210; *People
v Siemieniec,* 368 Mich 405, 407; 118 NW2d 430
(1962), and that probable cause exists when a
person of reasonable caution would be justified in

[35] *Andresen v Maryland,* 24 Md App 128, 172; 331 A2d 78 (1975);
427 US 463; 96 S Ct 2737; 49 L Ed 2d 627 (1976).

concluding that evidence of criminal conduct is in the stated place to be searched. *People v Sundling, supra* at 286; MCL 780.652; MSA 28.1259(2).

However, despite longstanding scholarly debate regarding the need for bright-line rules in Fourth Amendment analysis[36] and an occasional endorsement of that approach,[37] the United States Supreme Court has not adopted a unitary definition of probable cause as more probable than not. In *Illinois v Gates, supra* at 235, the Court rejected a definition of probable cause as more probable than not, stating that probable cause requires " 'only the probability, and not a prima facie showing, of criminal activity . . . .' " More recently, the Court has reiterated that the degree of probability required for issuance of a search warrant is not subject to a numerical quantification and that " '[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision,' " *New York v P J Video, Inc,* 475 US 868, 876; 106 S Ct 1610; 89 L Ed 2d 871 (1986).

To further focus the inquiry regarding the probability of "probable cause" that the evidence sought was still in the defendant's possession, we reiterate the core factual representations of the affidavit:[38] (1) on April 25, 1989, the affiant inter-

[36] See, for example, Alschuler, *Bright line fever and the Fourth Amendment,* 45 U Pitt L R 227 (1984).

[37] *Dunaway v New York,* 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979); *Michigan v Summers,* 452 US 692; 101 S Ct 2587; 69 L Ed 2d 340 (1981); *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981).

[38] The defendant challenged the first statement in the affidavit concerning the county protective services worker's statement that the victim had been sexually assaulted within the past two and one-half years. The prosecutor stipulated that no sexual assaults had in fact occurred during this period of time. The defendant claimed that the statement was submitted without regard to truth and that suppres-

viewed the girl, and she reported that she was sexually abused by the defendant at his home every other weekend over a four-year period, beginning in the fall of 1978 and ending in August, 1982, while she was between the ages of five and ten years old; (2) the girl described having been photographed by the defendant "naked or in various stages of undress" and having been videotaped alone or with the suspect involved in sexual activity; and (3) she reported being shown the photographs and videotapes "numerous times" by the defendant during her visits to his home and that she was familiar with the different locations within the home where the defendant stored the material, and the fact that the photographs were "bound in piles held together by string or rubber bands."

*Illinois v Gates, supra* at 238, holds that a judge is to examine the totality of circumstances to determine whether a "fair probability" exists that evidence of crime will be found. The issue in *Gates* was whether the affidavit sufficiently demonstrated "probable cause" that the defendants were involved in criminal activity. In rejecting the preponderance standard for probability, the Court relied on the arrest provisions of the Model Code of Pre-Arraignment Procedure which permits arrest " 'without requiring that at the time of the arrest the guilt of the person to be arrested be more probable than not.' " 1 LaFave, *supra,*

___

sion was the appropriate remedy for false statements which mislead a magistrate in his determination of probable cause to issue a search warrant.

The defendant failed to preserve the falsity claim because he failed to request a *Franks* hearing. See *Franks v Delaware,* 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978); *People v Reid,* 420 Mich 326; 362 NW2d 655 (1984). However, in light of the prosecutor's concession, we examine only the remaining facts in the affidavit to determine whether there was basis for the magistrate to conclude that probable cause existed.

§ 3.2(e), pp 590-591. The United States Supreme Court has not directly spoken to the standard of probability regarding presence of the evidence. However, Professor LaFave suggests that because the probable cause test is a compromise accommodating the " 'often opposing interests' of privacy and law enforcement," variable views of how probable is probable, are appropriate depending on the nature of the crime, the interest intruded, the focus on the individual, the alternative investigative techniques available, and whether the place to be searched is that of a third person or that of the suspect. 1 LaFave, *supra*, § 3.2(e), p 596.

While LaFave would not always employ a more probable than not standard when the uncertainty involves the identity of the person who committed a known crime, he would require a more demanding standard of more probable than not where the question is whether a crime has been committed. However, when the issue is a probability determination with respect to certain specific items being in a particular place, LaFave does not disagree with the *Gates* majority that probable cause does not require a more probable than not definition of probable cause. LaFave observes that it is a fair statement of the law that the "more probable than not" standard has not been actually applied and that

> [t]o the extent such rulings permit searches to be made upon something less than a 50% probability as to any one particular place, they do not appear objectionable. The fact remains that it is unlikely that the privacy of an innocent person will be disturbed under such circumstances. [1 LaFave, *supra*, § 3.2(e), pp 598-599.]

Other jurisdictions have recognized that the underlying facts of a child sexual assault, when

viewed in light of the propensity to save the pornographic pictures of the victim, may establish probable cause. In *People v Hernandez,* 225 Cal Rptr 230 (withdrawn by order of the court, 1986), the California Supreme Court affirmed a lower court's ruling that the defendant's admission of criminal sexual conduct was valid. The confession resulted from the seizure of a collection of sexually explicit photographs pursuant to a warrant based on information three years old. The lower court refused to reach the staleness of probable cause issue, finding that the defendant had failed to sustain his burden of proof by relying only on the passage of time.[39] Additionally, in *State v Woodcock,* 407 NW2d 603 (Iowa, 1987), the Iowa Supreme Court upheld the validity of a search of a pedophile's residence to confiscate homemade child pornography on the basis of information that was one and a half years old. And in *State v Young,* 37 Ohio St 3d 249, 257; 525 NE2d 1363 (1988), rev'd on other grounds, sub nom *Osborne v Ohio,* 495 US 103; 110 S Ct 1691; 109 L Ed 2d 98 (1990), the Ohio Supreme Court, while not specifying the entire time lapse involved, upheld the seizure of photographs of nude boys pursuant to a warrant based in part on an affidavit reciting that "psychological profiles of pedophiles reveal that they do not destroy their child pornography, but rather relive their sexual experiences through photographs of previous partners."[40]

---

[39] *Hernandez, supra,* 225 Cal Rptr 234. The victim and the investigating police officer later testified at the Senate Subcommittee Hearings, n 22 *supra,* regarding this pedophile's method of producing and using pornography to molest children.

[40] See also *State v Kasold,* 110 Ariz 563; 521 P2d 995 (1974), where the information supporting the warrant was five months old. The decision of the Arizona Supreme Court in *Kasold* was reversed by the United States District Court for the District of Arizona in *Kasold v Cardwell,* 393 F Supp 197 (D Ariz, 1975). The federal court based its decision on the fact that the defendant had moved his place of

Moreover, the Model Code of Pre-Arraignment Procedure relied on in *Gates,* also specifically rejects the more probable than not standard for searches. *Gates, supra* at 235.[41] Other than the authority cited, we have not been directed to, nor have we located, cases or commentary which provide clear guidance regarding the standard for "probability" that evidence of this type is still present years after it was initially created. Nevertheless, Professor LaFave's analysis is instructive and supports our conclusion that the magistrate had a substantial basis for issuance of the warrant.

First, it is not and could not be disputed that the affidavit contained allegations setting forth more than a possibility that criminal activity had been engaged in by a particular individual.[42] This case, therefore, does not involve the "slippery slope" of applying probability analysis to multiple arrests where the police suspect that ten persons are guilty of a crime but have no way of distinguishing between them.[43] Nor is this a situation in which there is uncertainty about whether a crime has occurred in which more than a fifty percent proba-

residence after the witness had observed the collection of pornography and before the warrant was issued. Professor LaFave questioned the federal court's conclusion as failing to give sufficient weight to the nature of the evidence seized. 2 LaFave, *supra,* § 3.7(a), p 87, n 48.

[41] The provision remained the same in the 1975 Proposed Official Draft. See Model Code of Pre-Arraignment Procedure, § 210.1(7) at 121 (Proposed Official Draft, Complete Text and Commentary 1975). The commentary to this section explicitly rejects a more probable than not standard. *Id.* at 499-500.

[42] We cannot agree with the dissent that the victim of these sexual assaults is subject to the same scrutiny of veracity, reliability, and basis of knowledge as an informant. *Post,* p 618, n 3. Neither the United States Supreme Court nor this Court has ever held that there is a constitutional requirement that a police officer verify specific allegations of criminal acts alleged by a named citizen outside the informant milieu. See, generally, 1 LaFave, *supra,* § 3.4, pp 712-749.

[43] Grano, *Probable cause and common sense: A reply to the critics of* Illinois v Gates, 17 U Mich J L Ref 465, 498 (1984).

bility might be required "because of the risk that the privacy of innocent persons will be intruded upon." 1 LaFave, *supra,* § 3.2(e), p 604.

Second, it is not apparent that there were alternative investigative techniques available to update the probability that the evidence was presently in the defendant's possession. Thus, it cannot be concluded that "the magistrate acted outside the zone of reasonableness in concluding that further investigation was not warranted."[44] Additionally, while the interest invaded was most significant, the type of material and the use to which it was put, made it highly unlikely that it would be kept anywhere but in the home.

Third, since possession of the tapes and photographs was not in itself criminal, but, rather, mere evidence of defendant's activity, the passage of time without complaint would tend to negate the anxiety that would counteract the demonstrated propensity to retain the material. In this instance, the passage of time might be inversely proportional to the likelihood that the defendant still had the material.

Fourth, unlike the possession of contraband or the situation in which the criminal activity incidentally and sometimes unwittingly creates evidence of crime, where the reasonable inference is that a person will get rid of incriminating evidence, the case at bar' involves a situation in which the individual intentionally created evidence of his criminal activity and displayed it over the course of years. Moreover, the evidence was not simply created and used, it was stored with a degree of care indicative of its continuing value to the defendant.

Finally, it is possible to infer that the items

[44] Grano, n 43 *supra* at 478, n 74.

might have ceased to have value for the defendant when his molestation of the victim ceased. But just as the possibility that there was an innocent explanation for the behavior of the defendants in *Gates* did not negate the majority's finding that there was a fair probability that they were engaged in criminal activity,[45] we think that the magistrate here could conclude that there was a "fair probability" of the presence of evidence which had sexual, historical, and perhaps even sentimental, significance for its possessor and creator. Although the particular stimulus may not be within our common experience, the allure of sexual fantasy made real is as familiar as daytime talk shows, soap operas, and rented movies.

In balancing the interests involved, we conclude that the search was not constitutionally unreasonable. We have found no authority directly on point. However, we are left with the firm conviction that in the facts of this case there were only two possible courses of action, to secure a search warrant or to forgo the possibility of obtaining the evidence. While reasonable people could reasonably disagree with the assessment made by the magistrate, we have not found reason to conclude that in this situation the United States Constitution and common sense are at war. *Mapp v Ohio,* 367 US 643, 657; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

This is not a situation in which the government claims that simply because a person has indicated interest in possessing pornographic material he is likely to be in present possession of it. *United States v Weber,* 915 F2d 1282 (CA 9, 1990). Nor is this a situation in which the government seeks a

---

[45] Justice Stevens' dissent focused on possible innocent explanations in rejecting a finding of probable cause. *Gates, supra* at 291-292 (Stevens and Brennan, JJ., dissenting).

search warrant on the basis of a single incident of photographing child victims. *State v Woodcock, supra.* Most importantly, this is not a situation in which the government claims the right to invade the sanctity of the home on the basis of a profile that suggests: once a collector of child pornography, always a possessor. *Washington v Smith,* 60 Wash App 592; 805 P2d 256 (1991), lv den 116 Wash 2d 1031 (1991).

We hold only that where suspicion of criminal activity has focused on a specific individual by a standard more probable than not, and it is alleged that the evidence sought was created, retained, and employed in ongoing criminal activity over a four-year period, the magistrate could reasonably conclude that there was a "fair probability" that the evidence would be retained in the residence of the accused.

Affording deference to the magistrate's conclusion, we conclude that there was a substantial basis to infer a fair probability that the items still were present. Accordingly, we reverse the decision of the Court of Appeals.

IV

CONCLUSION

In sum, the Legislature intended that the extended statute of limitations set forth in MCL 767.24(2); MSA 28.964(2) was to apply to formal charges filed after the effective date of the amendment. Because no charge had been filed against the defendant, nor had the previous statute of limitations expired before the limitation period was amended, the extended statute of limitations applies. We find that such an application is not a violation of Ex Post Facto Clauses of the United States and Michigan Constitutions.

Affording deference to the magistrate's determination, a reviewing court simply must ensure that the magistrate had a substantial basis for concluding that probable cause existed at the time the search warrant was issued. In this case, the affidavit recounted the facts uncovered during the investigation that provided the magistrate a substantial basis to make an independent judgment that probable cause currently existed and to believe there was a fair probability that the items sought would still be present in the defendant's home.

Therefore, we affirm the decision of the Court of Appeals regarding the statute of limitations issue and reverse its decision with respect to the search and seizure issue. We remand this case to the trial court for proceedings consistent with this opinion.

RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I agree with the majority that the amended statute of limitations was intended by the Legislature to apply to offenses not barred when the amendment took effect.[1] I also agree that the application of the amended statute of limitations does not violate the Ex Post Facto Clauses of the United States and Michigan Constitutions.[2]

With regard to the validity of the search warrant, I agree with the majority that the proper standard of review of a magistrate's decision to issue a search warrant is set forth in *Illinois v Gates*, 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983). See also *People v Landt*, 439 Mich 870 (1991). I also agree that when a warrant contains misrepresentations, the misrepresentations must

[1] MCL 767.24(2); MSA 28.964(2).
[2] US Const, art I, § 10, cl 1; Const 1963, art 1, § 10.

be excluded and the warrant reviewed to determine whether there was probable cause independent of the excluded material. See *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978); *People v Reid,* 420 Mich 326; 362 NW2d 655 (1984).

I cannot agree, however, with the majority's conclusion that the affidavit, comprised of information minimally almost seven years old and potentially over ten years old, was sufficient to establish probable cause to search the defendant's home.

The affidavit provided the magistrate with the following facts:

Your affiant is a detective with the Grand Rapids Police Dep't. assigned to the Juvenile Division of that department. On April 4, 1989, your affiant received information from Clinton County Protective Services regarding . . . possible sexual assault[s] between Sam Russo as the suspect and [the complainant], age 16, *said sexual assaults occurring at various locations within the City of Grand Rapids, Kent County, Michigan, for the past 2½ years.*

On April 25, 1989, your affiant interviewed the complainant . . . in her office at the Grand Rapids Police Dep't. [The complainant] stated that she would visit the home of Sam Russo every other week-end. She stated further that during those week-end visits she would be sexually assaulted by Sam Russo, said sexual assaults involving co-mutual touching and acts of sexual penetration between herself and Sam Russo. [She] indicated that on various times either before, during or after said sexual assaults Sam Russo would photograph her naked or in various stages of undress. On several occasions video tapes were made of the victim alone or with the suspect involved in sexual activity or naked poses.

[She] *stated further that said sexual assaults began sometime in the Fall of 1978, when [she]*

*was five years of age, and ended in August of 1982
when [she] was 10 years of age.* [She] further
indicated to your affiant that both the photographs
and video tapes were displayed to her by the
suspect numerous times during her week-end vis-
its. Additionally [she] indicated that the photo-
graphs were stored in different locations, within
the home and bound in piles held together by
string or rubber bands. Said videos and pictures
were observed by [her] at the 526 Livingston ad-
dress. Suspect Sam Russo is not related by either
blood or affinity to alleged victim . . . . [Emphasis
added.]

On the basis of the allegations in the affidavit, the
magistrate issued a search warrant authorizing
the search of the defendant's home for pictures
and videotapes of the victim.

A careful review of the affidavit reveals that
some of its allegations are inconsistent. For exam-
ple, it initially alleges that the sexual assaults
occurred over the last 2½ years and then specifi-
cally states that the assaults occurred when the
victim was between the ages of five and ten, end-
ing in 1982. The prosecutor admitted at oral argu-
ment before this Court that the reference in the
affidavit that sexual assaults had occurred for the
past 2½ years was a mistake. Thus, the misrepre-
sented allegations must be excluded and the affida-
vit reëvaluated to determine whether probable
cause existed.

After excluding the misrepresented facts, what
remains is an affidavit that states that sexual
assaults occurred between the fall of 1978 and
August of 1982. Further, that sometime during
this period, the victim was photographed and vid-
eotaped and that sometime later the victim ob-
served the photographs and videotapes with the
defendant. Finally, that the defendant stored the

photographs in different locations in his home, bound by string and rubber bands. I consider to be of particular importance what is *not* in the affidavit. Nowhere in the modified affidavit are there any allegations that the defendant's conduct continued after August of 1982. Nowhere in the modified affidavit is there any evidence to suggest that any police officer attempted to substantiate any of the claims of the victim, not even to the minimal extent of determining whether the defendant had the opportunity to commit the alleged offenses.[3] Finally, and of most significance, nowhere in the modified affidavit is there any indication that the items to be searched for would be in the defendant's possession at the time the warrant was executed.[4]

Because I believe the modified affidavit did not provide probable cause to search the defendant's home, specifically because the allegations were stale, I would quash the warrant. I recognize, however, that many lower federal courts have found probable cause despite substantial gaps between the observation of the evidence and the issuance of the warrant. See, e.g., *United States v Greany,* 929 F2d 523 (CA 9, 1991) (two years); *United States v Rowell,* 903 F2d 899, 903 (CA 2, 1990) (1½ years); *United States v Freeman,* 685 F2d 942 (CA 5, 1982) (seven months); *United States v Minis,* 666 F2d 134 (CA 5, 1981) (three months);

[3] The Court in *Gates* rejected the strict application of the *Aguilar-Spinelli* test, but it did state that veracity, reliability, and basis of knowledge were "closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates,* 230. In this case the victim's basis of knowledge is evident, but her veracity and reliability are unknown. See *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969).

[4] See *Sgro v United States,* 287 US 206; 53 S Ct 138; 77 L Ed 260 (1932).

*United States v Johnson,* 461 F2d 285 (CA 10, 1972) (three weeks); *United States v LaMorte,* 744 F Supp 573, 575-576 (SD NY, 1990) (3½ years). Examining these cases, I reiterate the majority's finding that there has been *no* case that has upheld a probable cause determination based solely on allegations more than six years old.[5]

Two reasons that usually justify such a search are that the evidence sought is of an ongoing criminal business, *Greany,* or the evidence is of a type that is not ordinarily moved from one place to another, *Freeman.* Neither of these situations is present in this case. Unlike *Greany* which involved marijuana cultivation ("an ongoing criminal business of a necessarily long-term nature . . . rather than . . . a completed act," *Greany,* p 525), the victim in this case admitted that the assaults ended in 1982. The affidavit does not allege, and it cannot be assumed, that the defendant continued to engage in this type of activity with other victims.[6] As expressly stated in the warrant, the search was not for evidence of an ongoing criminal activity but evidence of prior criminal acts with the victim.[7]

---

[5] *Ante,* p 613. Interestingly, the majority attempts to make the relevant appear irrelevant by stating on one hand that "[t]ime [is] a factor in the determination of probable cause to search," and, on the other hand, that "[i]n this instance, the passage of time might be inversely proportional to the likelihood that the defendant still had the material." *Id.,* pp 605, 612.

[6] In *Aguilar v Texas,* n 3 *supra,* p 109, n 1, the Court stated: "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." (Emphasis in original.)

[7] The search warrant stated:

THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I command that you search the following described place . . . and . . . seize, secure, tabulate and make return according to law the following property and things: *Picture, Polaroid snap-shots and video tapes of* [*the victim*], dob 6-30-73, either naked or partially clad, and/or involved in any sexual

In addition, unlike the *Freeman* case that involved a search for bank records, generally kept in one locale, the objects of the search in this case were sexually explicit pictures and videos of the victim. A review of the profile offered by the majority suggests to me that this type of evidence is often moved from one place to another. Resorting to the pedophile profile, the majority emphasizes the fact that a pedophile almost never destroys the incriminating evidence.[8] The question, of course, is not whether the objects of the search will be destroyed, but whether the objects of the search will be at the place to be searched at the time the search warrant is executed. According to the profile, a tendency of a pedophile with regard to child pornography is to sell, hide, move, or give the collection to another pedophile.[9] Thus, because this is the type of evidence that is passed around, it is not the type of evidence that would likely remain at the same location seven years later.

For the reasons stated above, I find no basis for this Court to transmogrify evidence, which the majority itself characterizes as historical and sentimental, into a present basis for probable cause.[10] Therefore, I would affirm the judgment of the Court of Appeals.

BRICKLEY, J., concurred with CAVANAGH, C.J.

LEVIN, J. (*dissenting*). I would hold as a matter of statutory construction, and thus have no need to reach the constitutional issue, that 1987 PA 255, amending the statute of limitations for pros-

---

acts or touchings by other persons or to other persons, cameras, which may have been used to take such picture[s], and undeveloped film which may contain such pictures. [Emphasis added.]

[8] *Ante,* p 601.

[9] *Id.*

[10] *Ante,* p 613.

ecutions of criminal sexual conduct where the victim is under the age of eighteen, is prospective, and thus extends the time for the commencement of prosecution only where the offense is committed after the effective date of the amendment. See *Harrison v Metz,* 17 Mich 377, 382 (1868), where this Court, speaking through Justice COOLEY, said that it had no doubt the Legislature intended that legislation shortening the statute of limitations affects "only the causes of action which should accrue subsequent to its taking effect as law. There is nothing in the act itself from which we can gather any different intent, and it is a sound rule of construction that legislation is to have a prospective operation only, except where the contrary intent is expressly declared or is *necessarily* to be [inferred] from the terms employed."[1] (Emphasis added.)

A legislative intent to make Act 255[2] retrospective is neither expressly declared nor necessarily to be inferred from the terms employed.[3] Nor has there been adduced any other evidence of legislative intent.

---

[1] Similarly, see *McKisson v Davenport,* 83 Mich 211, 215; 47 NW 100 (1890); *Angell v West Bay City,* 117 Mich 685, 688; 76 NW 128 (1898); cf. *Hathaway v Washington Milling Co,* 139 Mich 708, 711; 103 NW 164 (1905); *In re Davis Estate,* 330 Mich 647, 653; 48 NW2d 151 (1951); *Tarnow v Railway Express Agency,* 331 Mich 558, 565; 50 NW2d 318 (1951). See also *Ferris v Beecher,* 85 Mich App 208, 214; 270 NW2d 658 (1978); *Pryber v Marriott Corp,* 98 Mich App 50, 55; 296 NW2d 597 (1980).

[2] The pertinent amendatory language reads as follows:

Notwithstanding subsection (1), if an alleged victim was under 18 years of age at the time of the commission of the offense, an indictment for an offense under section 145c or 520b to 520g of the Michigan penal code, Act No. 328 of the Public Acts of 1931, being sections 750.145c and 750.520b to 750.520g of the Michigan Compiled Laws, may be found and filed within 6 years after the commission of the offense or by the alleged victim's twenty-first birthday, whichever is later.

[3] The clause, "if an alleged victim *was* under 18 years of age at the

time of the commission of the offense," (see *ante,* p 597) is stylistically
preferable to alternatives such as "if an alleged victim *shall have
been* under 18 years of age at the time of the commission of the
offense," and imparts nothing regarding the prospectivity/retroactivity
question. See *Selk v Detroit Plastic Products,* 419 Mich 1, 25-26;
345 NW2d 184 (1984) (Levin, J., dissenting), *On Resubmission,* 419
Mich 32, 39-40; 348 NW2d 652 (1984) (Levin, J., dissenting).