*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JERMAINE JEHVON HARDEN,

Defendant-Appellant.

UNPUBLISHED
March 17, 2020

No. 342992
Wayne Circuit Court
LC No. 17-008535-01-FC

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Jermaine Jehvon Harden, appeals his jury trial conviction of first-degree criminal sexual conduct (CSC), MCL 750.520b. Harden was sentenced as a second-offense habitual offender, MCL 769.10, to 356 months to 60 years' imprisonment. We affirm.

## I. BACKGROUND

This case arises from a gang rape that occurred in 1997. The victim, then a 13-year-old girl, was walking home from school when she was abducted from the street by a man she did not know, dragged into an apartment building, and taken to a second-floor bedroom against her will. There, four to five men raped her. None of the men in the room spoke to the victim, but they worked together to hold her arms and legs down on the bed while each took turns raping her. She was later taken to a nearby trailer where another man raped her. Later, a sexual assault examination was performed, and a condom was found inside of the victim's vaginal canal and secured as evidence in a sexual assault kit. However, the kit was not examined by the Detroit Police Department until 2009. DNA testing was performed, and DNA found on the condom matched Harden's DNA. He subsequently was charged with first-degree CSC. At trial, the victim identified Harden as one of the men in the bedroom who raped her. The jury convicted Harden as charged, and Harden was sentenced to a term of imprisonment. This appeal followed.

## II. EX POST FACTO

Harden first argues that the removal of the statute of limitations for first-degree CSC offenses constituted an ex post facto violation. We disagree.

-1-

We review constitutional questions de novo. *People v Cameron*, 319 Mich App 215, 220; 900 NW2d 658 (2017). The United States and Michigan Constitutions prohibit the enactment of ex post facto law. US Const, art I, § 9; Const 1963, art 1, § 10. "The Ex Post Facto Clauses of the United States and Michigan Constitutions bar the retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014).

In this case, when the crime was committed in 1997, the statute of limitations for first-degree CSC was "within 6 years after the commission of the offense or by the alleged victim's twenty-first birthday, whichever is later." *People v Kasben*, 324 Mich App 1, 4; 919 NW2d 463 (2018), quoting MCL 767.24, as amended by 1987 PA 255 (quotation marks omitted). In 2001, before the victim's twenty-first birthday, the Legislature amended the statute of limitations. As a result of the amendment, first-degree CSC "may [now] be found and filed at any time." *Kasben*, 324 Mich App at 4; MCL 767.24, as amended by 2001 PA 6.

On appeal, Harden relies on the United States Supreme Court case *Stogner v California*, 539 US 607; 123 S Ct 2446; 156 L Ed 2d 544 (2003), to support his argument that the removal of the statute of limitations for first-degree CSC offenses violates the Ex Post Facto Clauses of the United States and Michigan Constitutions. We conclude that the facts in *Stogner* are distinguishable from the facts herein. In *Stogner*, the United States Supreme Court considered the constitutional implications of a California law that was altered to permit the prosecution of crimes for which the statutes of limitation had long since expired. *Id*. at 610. The *Stogner* Court concluded that the amendment would allow the California legislature to "inflict[] punishments, where the party was not, by law, liable to any punishment." *Id*. at 613. The *Stogner* Court held "that a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." *Id*. at 617-619. Because the statute of limitations in this case had not yet expired at the time MCL 767.24 was amended, *Stogner* is not dispositive.

However, the holding in *People v Russo*, 439 Mich 584, 593; 487 NW2d 698 (1992), is dispositive. In *Russo*, the defendant committed multiple counts of CSC at a time when the statute of limitations for such acts was six years. *Id*. at 590. Five months before the six-year statute of limitations would have expired, the Legislature amended the statute of limitations to allow the filing of charges within six years of the commission of the offense or by the time the victim turned 21 years old. *Id*. As relevant to this appeal, the *Russo* Court determined that "[w]ell-settled principles require the conclusion that applying the extended statute of limitations to the then-not-yet-time-barred alleged sexual assaults is not ex post facto." *Id*. at 701. The *Russo* Court pointed out that

> [t]he sexual assaults were not innocent when committed, the quantum of punishment is unchanged, and the defendant has not been deprived of any defense available to him at the time the acts were committed. The statute of limitations defense was not available to the defendant at the time the assaults were committed or at the time the amendment became effective. The Legislature amended the statute of limitations five months before the defendant had any substantive right to invoke its protection. [*Id*. at 701-702.]

-2-

The same is true for Harden. Specifically, his acts were not legal when they were committed in 1997, and he was subject to no greater punishment as a result of MCL 767.24's amendment. Furthermore, there is no indication that he was deprived of any defense given that the statute of limitations defense was not available to Harden at the time the crime was committed or at the time the amendment became effective. Consequently, because the application of the extended statute of limitations did not violate the Ex Post Facto Clauses, Harden's ex post facto argument is without merit.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Harden next argues that he is entitled to a new trial because defense counsel was ineffective when he stipulated to the chain of custody of the victim's sexual assault kit. We disagree.

Harden failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial or a *Ginther*[1] hearing. Therefore, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

Any gaps in the chain of custody normally affect only the weight of the evidence rather than its admissibility. *People v White*, 208 Mich App 126, 132-133; 527 NW2d 34 (1994). Thus, a perfect chain of custody is not required to admit evidence, and gaps do not require automatic exclusion of the evidence. *Id*. Because an objection to the admissibility of the sexual assault kit would have been futile given that gaps in the chain of custody go to weight rather than admissibility, Harden has failed to establish that his counsel was ineffective for failing to object. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating that counsel is not ineffective for failing to raise a meritless argument). Furthermore, Harden cannot establish that defense counsel's decision to stipulate to the sexual assault kit's chain of custody caused him prejudice. Harden does not dispute that the sexual assault kit admitted into evidence was the one collected from the victim in 1997. Additionally, at trial, the victim identified Harden as one of the men who raped her in the bedroom. Thus, because Harden has failed to establish that defense counsel's performance was deficient or prejudicial, he is not entitled to relief.

## IV. ADMISSION OF EVIDENCE

Harden also argues that the trial court erred when it permitted the victim to testify about attending therapy for four years after being raped because such testimony was irrelevant and prejudicial. We disagree.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

We review a trial court's decision to admit evidence for an abuse of discretion. See *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018). If an "evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Jackson*, 498 Mich at 257 (quotation marks and citation omitted).

"Generally, all relevant evidence is admissible, unless otherwise provided by law, and evidence that is not relevant is not admissible." *People v Fletcher*, 260 Mich App 531, 553; 679 NW2d 127 (2004). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Although evidence may be relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Harden argues that the victim's testimony that she attended therapy was irrelevant to whether Harden was one of the individuals who raped her. Arguably, the testimony about the victim's therapy was relevant to her credibility. See *People v Wilder*, 502 Mich 57, 65 n 11; 917 NW2d 276 (2018) (holding that "witness credibility is 'of consequence' to the action"). When the prosecutor asked the victim why it was difficult to discuss this case, she explained that she went "through therapy for four years to learn how to cope with this" and that she "tried to erase it from [her] mind." Thus, the victim's testimony about attending therapy gave context to the victim's inability to recall certain details of the crime and the events that occurred after the crime.[2] The evidence therefore cannot be considered " 'marginally probative evidence' and, thus, cannot possibly be considered unfairly prejudicial." See *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Consequently, we conclude that the evidence was relevant and did not violate MRE 403.

Moreover, even if the trial court abused its discretion by admitting the evidence, Harden fails to demonstrate that it undermined the reliability of the verdict. The victim's testimony regarding attending therapy was brief, undetailed, and did not contain any statements identifying her assailants. Indeed, the victim did not testify about what she discussed in therapy with her therapist. The testimony was also innocuous when compared to the victim's testimony about the

---

[2] During cross-examination, the victim agreed that her memory was "somewhat" "sketchy" and that she could not recall whether the bedroom was "light or dark." She also indicated that she "blacked out" during the assaults. The victim also could not recall what hospital she went to after the assaults, "anything specific about th[e] rape kit," if her mother was present when she was being examined at the hospital, or if police officers came to the hospital to interview her. The victim did not recall if any of the men who raped her wore a condom. Additionally, during defense counsel's cross-examination of the victim, defense counsel impeached the victim with her testimony at Harden's preliminary examination that she thought Haden assaulted her in a trailer, not in the apartment.

rape. Consequently, Harden has failed to establish that any error was outcome determinative. See *People v Dixon-Bey*, 321 Mich App 490, 514; 909 NW2d 458 (2017) (holding that it is not likely that the jury will give undue weight to one brief portion of a single witness's testimony during a lengthy trial).

## V. OFFENSE VARIABLES

Finally, Harden argues that the trial court erred when it scored Offense Variable (OV) 10 and OV 8. We disagree.

"Under the sentencing guidelines, the [trial] court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

## A. OV 10

A trial court is required to assess 15 points for OV 10 for predatory conduct; predatory conduct is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). Preoffense conduct like lying in wait is commonly understood as being predatory in nature requiring the assessment of 15 points for OV 10. *People v Huston*, 489 Mich 451, 462-463; 802 NW2d 261 (2011) (quotation marks omitted).

At sentencing, defense counsel objected to the trial court scoring OV 10 at 15 points. The prosecution argued that 15 points should be assessed for OV 10 because Harden engaged in predatory conduct by "lying in wait" in the second-floor apartment while another member of the group kidnapped the victim and delivered her to the bedroom to be raped. The trial court found that Harden was part of the plan to kidnap and rape the victim, concluded that Harden's behavior was predatory in nature, and assessed 15 points for OV 10. Thus, the issue is whether the trial court clearly erred when it found that Harden was part of the preoffense abduction and asportation of the victim such that he was lying in wait in the second-floor bedroom awaiting the delivery of the victim.

The victim's testimony supports the trial court's conclusion of predatory conduct. The victim explained that she was abducted off the street and delivered to a group of men inside of a bedroom in a second-story apartment. She testified that, once she was taken into the bedroom, the men "laid [her] on [a] bed" and held her arms and legs down. Thereafter, each man assumed their role in the gang rape: at times holding the victim down on the bed and at other times taking their turn raping the young girl. The evidence concerning the nature of the kidnapping, movement of the victim to a place of greater danger, coordinated imprisonment, and the teamwork among the rapists leads to the reasonable inference that Harden, and his cohorts, did not unexpectedly encounter the victim at their apartment door and then simultaneously and unanimously form the criminal intent to rape the victim. Instead, as found by the trial court, there was sufficient evidence to support a reasonable inference that Harden was part of a preoffense plan to kidnap the victim while he and others laid in wait for the victim. To conclude otherwise would leave one to struggle through the highly unlikely scenario that there was no preoffense planning between the kidnapper

and the men in the apartment. Instead, this is a case of a randomly kidnapped, 13 year-old girl, who is dragged immediately into a nearby apartment building and taken directly to a second-floor apartment where a group of men are gathered by happenstance. Then the men immediately place the girl on a bed, restrain her by force, and work together as a unified team to repeatedly rape her. The trial court was right to not to entertain this improbable scenario and instead to rely on reasonable inferences from the evidence that this was a planned kidnapping and delivery of a girl to Harden and others who were lying in wait. Thus, we conclude that OV 10 was properly scored at 15 points.

## B. OV 8

Harden also argues that OV 8 was improperly scored. However, we conclude that Harden waived this challenge. A waiver is the intentional and voluntary relinquishment of a known right. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

At the sentencing hearing, the following exchange took place:

> *The Prosecutor*: OV-8 we have scored at 15 [points] because the victim was asported to another place of greater danger.
>
> *The Court*: You agree with that?
>
> *Defense Counsel*: Yes, your Honor.

By defense counsel affirmatively agreeing that OV 8 should be scored at 15 points, any challenge to OV 8 was waived. Therefore, Harden is not entitled to relief in relation to this argument. See *Carter*, 462 Mich at 216 (holding that waiver extinguishes the right to appeal an alleged error).[3]

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro

---

[3] Even if the argument concerning OV 8 was not waived, we would conclude that the trial court properly scored OV 8 at 15 points given that the victim "was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a); see also *People v Barrera*, 500 Mich 14, 16-17; 892 NW2d 789 (2017).