*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATHAN DANIEL GILLIAM,

        Defendant-Appellant.

UNPUBLISHED
February 15, 2024

No. 364254
Allegan Circuit Court
LC No. 2021-024087-FC

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant Nathan Daniel Gilliam appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), one count pursuant to MCL 750.520b(1)(a) (sexual penetration of a person who is under 13 years of age), and one count pursuant to MCL 750.520b(1)(b)(*i*) (sexual penetration of a person between the ages of 13 and 16, and member of the same household). The trial court sentenced Gilliam as a second-offense habitual offender, MCL 769.10, to serve 262 months to 540 months' imprisonment for each count. On appeal, Gilliam argues that amendments to the statute of limitations for CSC-I and the admissibility of statutory other-acts evidence violated his due process rights. We disagree and affirm.

## I. BACKGROUND

This case arises out of Gilliam's repeated sexual assault of his stepdaughter, AM, who was born in 1987. Gilliam met AM when she was five or six years old. He began to date AM's mother, LG, and they married in 1994 when AM was seven years old. When LG worked on weekends, Gilliam would get AM from her bedroom and bring her downstairs to the bedroom that he shared with LG. At times he would make AM sleep next to him while they were both naked. When AM was 12 years old, Gilliam began to rub his penis in the folds of her vagina, and, by the time AM was 14 years old, he was penetrating her vagina with his penis. AM estimated that this occurred at least 50 times. On at least one occasion after she turned 16, Gilliam attempted anal sex, but was unsuccessful. AM testified that after she turned 16, he would also occasionally have her put her mouth on his penis.

-1-

Through her childhood, well into adulthood, Gilliam continued to isolate, control, and sexually assault AM until she was 25 years old and was finally able to leave the family home. The pattern of isolation, control, and sexual assault included telling AM that he wanted to marry her and have children with her when she was 16. Gilliam would supervise AM when she went on dates with boys her own age. As a teenager, he forced AM to write a note saying that she would stay with him for the rest of her life, as if they were in a romantic relationship. Gilliam kept the note in his wallet. At trial the court admitted two notes, which AM read to the jury during her testimony. The first, which she wrote at age 18, stated that AM promised not to cheat on Gilliam, that she would have a child with him soon, and that she would not go places "to get laid or hook up" with men. AM described Gilliam as controlling, and writing letters was one way she was able to convince him to allow her to leave the house. When she was in her twenties, AM wrote another note to Gilliam that she read to the jury as follows:

> I, [AM], promise to marry you without any protest if you let me hand [sic] and/or date Tony and if it doesn't work out with Tony, I will marry you with no questions asked. You have my word even though it doesn't mean much, but hopefully that will change.

AM testified that his sexual contact with her continued until she was 25 years old. She first reported Gilliam's sexual abuse in 2020 when she was 33. She first told a romantic partner and later that same day made a report to the police. Gilliam was charged in January 2021 with sexually assaulting AM.

The information charged Gilliam with five counts. Count 1 charged him with committing CSC-I through penile-vaginal penetration of AM, when AM was less than 13 years old. Counts 2 through 4 charged Gilliam with committing CSC-I with multiple variables, namely that when the sex acts occurred, AM was at least 13 but less than 16 years old, that he and AM were related by blood or affinity to the fourth degree, that they were members of the same household, and that he coerced AM into sex acts through exercise of his position of authority. Count 2 alleged penile-vaginal penetration. Count 3 alleged fellatio. And Count 4 alleged penile-anal penetration. With each CSC-I count, the prosecution included a second or subsequent offense notice related to a prior conviction under MCL 750.520c(1)(a), which subjected Gilliam to a mandatory minimum of five years under MCL 750.520f. Finally, Count 5 charged Gilliam with domestic violence, MCL 750.81(2). The information alleged that the criminal conduct occurred between 1998 and 2003.

In mid-October 2021, the prosecution filed a timely notice of its intent to admit other-acts evidence under MCL 769.27a and 768.27b. The notice summarized Gilliam's charges, noting that they stemmed from Gilliam's conduct with AM between approximately 1998 and 2003. In addition to those allegations, the notice indicated that the prosecution intended to offer evidence of multiple acts of criminal sexual conduct, sexual contact, and accosting a child for immoral purposes that Gilliam engaged in with AM over the course of 20 years. The notice provided that AM described the acts in verbal and written statements to the police, police reports and recorded interviews that had been made available to the defense. More specifically, it indicated that the acts related to AM began when AM was approximately 5 to 7 years old and continued until she was 25 years old, and involved Gilliam telling AM he wanted to marry her, for her to have his baby, and telling her no one would believe her if she told them about his conduct. Separate from AM, the prosecution noticed its intent to introduce evidence related to another victim "HS," who Gilliam

sexually assaulted in the late 1980s and early 1990s when HS was between 8 and 11 years old. The prosecution intended to introduce evidence that Gilliam engaged in sexual contact and penile-vaginal penetration with HS. Like AM, Gilliam told HS he wanted to marry her and wanted her to have his baby. According to the notice, despite initial denials, Gilliam ultimately admitted to the allegations (though blaming HS "for being sexually aggressive"), resulting in a conviction for CSC-II in 1991. According to the notice, shortly after his discharge from his three-year term of probation for the CSC-II conviction, Gilliam met AM's mother, married her, and began sexually assaulting AM, which continued for 20 years.

At trial, AM testified regarding the conduct underlying the five counts and Gilliam's other acts. As described above, AM testified to a pattern of sexual assault and manipulation that continued from shortly after Gilliam met her until AM left their shared household in her early 20s.

Consistent with its notice, the prosecution also called HS and HS's mother, LS, to testify about Gilliam's sexual assault of HS. LS testified that she met Gilliam when he was 17 or 18 years old and knew him as a friend of the boy her oldest daughter was dating. Gilliam began to come to HS's house even when LS's oldest daughter and her boyfriend were not there. LS allowed him to play with the younger children, including HS, who was six at the time. When HS was 11, LS learned from a police officer that Gilliam had sexual contact with HS. HS testified that Gilliam sexually assaulted her by putting his hands down her pants and touching her genitals. She testified that on several occasions he would have sexual intercourse with her. She was approximately 10 or 11 years old at the time of the assaults, which occurred approximately between 1988 and 1990. Following her testimony, the trial court admitted documents that showed Gilliam's charges and convictions for this conduct.

Of the five original counts in the information, only two went to the jury. During the trial, the prosecution moved to voluntarily dismiss the domestic-violence charge (Count 5). The trial court also dismissed Counts 3 and 4, which respectively alleged fellatio and penile-anal penetration when AM was between 13 and 16 years old. AM testified that such conduct did not occur until after she was 16. The prosecution moved to amend the charges to reflect vaginal penetration, because AM testified that Gilliam engaged her in penile-vaginal sex on multiple weekends when her mother was working, but the trial court denied the motion and dismissed Counts 3 and 4. The jury therefore only considered two counts of CSC-I, one count under MCL 750.520b(1)(a) and one count under MCL 750.520b(1)(b)(*i*).

The jury found Gilliam guilty on both of the remaining counts. In May 2022, the trial court sentenced Gilliam to 262 to 540 months' imprisonment with lifetime electronic monitoring. This appeal followed.

## II. CONSTITUTIONALITY OF THE STATUTE OF LIMITATIONS FOR CSC-I

Gilliam first argues that MCL 767.24(1)(a), which provides that an indictment for CSC-I may be filed at any time, is unconstitutional on its face and as applied to his case. We disagree. Gilliam's claim is specifically rooted in a purported due process violation. But his arguments hint at challenges defendants have raised to MCL 767.24 as a violation of the Ex Post Facto Clauses of the United States and Michigan Constitutions. US Const, art I, § 9, cl 3; Const 1963, art 1, § 10.

We therefore address why MCL 767.24(1)(a) violates neither the Due Process Clause nor the Ex Post Facto Clause facially or as applied to Gilliam's case.

At the threshold, we observe that Gilliam did not preserve this issue for appeal by raising it in the trial court, and we review unpreserved claims that a statute is unconstitutional for plain error. See *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). In order to obtain relief under the plain-error rule, a defendant bears the burden of proving that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—in other words, the error affected the outcome of the proceedings. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). If a defendant satisfies these three requirements, the court must determine whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Id*. at 280. This last step, sometimes identified as a fourth prong of plain-error analysis, conceptually overlaps with the third prong. *People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).

"A statute challenged on constitutional grounds is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citation omitted). As this Court further explained in *Johnson*, 336 Mich App at 692:

> "A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." A facial challenge attacks the statute itself and requires the challenger to " 'establish that no set of circumstances exists under which the [a]ct would be valid. The fact that the . . . [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . .' " An as-applied challenge alleges " 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action." [Citations omitted.]

By way of background, after 1954, the period of limitations for all criminal sexual conduct crimes in Michigan was six years from the date that the offense was committed, pursuant to 1954 PA 100. In 1987, the year that AM was born, the Legislature passed 1987 PA 255, which became effective on March 30, 1988, and provided "that CSC offenses 'may be found and filed within 6 years after the commission of the offense or by the alleged victim's twenty-first birthday, whichever is later.' " *People v Kasben*, 324 Mich App 1, 4; 919 NW2d 463 (2018), quoting 1987 PA 255. This was the statute of limitations in effect until the Legislature passed 2001 PA 6, which states that CSC-I charges may be brought at any time.

## A. EX POST FACTO

First, there is no ex post facto violation because the applicable statute of limitations never exposed Gilliam to new penalties or re-exposed him to criminal liability that had lapsed. See *People v Russo*, 439 Mich 584, 593; 487 NW2d 698 (1992).

Here, the prosecutor specifically charged Gilliam with CSC-I for conduct that occurred when AM was under the age of 13 (Count 1) and when AM was older than 13 years old but younger than 16 years old (Count 2). AM testified that Gilliam began to penetrate the folds of her vagina

with his penis when she was 12 years old, in 1999, and that this happened five or six times when she was 12 years old. AM further testified that Gilliam began to force her to engage in penile-vaginal intercourse when she was 14 years old, in 2001, and that this continued for several years. In 1999, the statute of limitation was six years or the victim's twenty-first birthday, which was in 2009. Although Gilliam's crimes were well within the period of limitations, our Legislature eliminated the statute of limitations by enacting 2001 PA 6.

In *People v Russo*, 439 Mich at 593, our Supreme Court addressed a claim regarding the Legislature's 1987 extension of the statute of limitations for sexual assaults in MCL 767.24 by 1987 PA 255 and ruled "that applying the extended statute of limitations to the then-not-yet-time-barred alleged sexual assaults is not ex post facto." For that reason, it was not unconstitutional for the Legislature to amend the statute of limitations "before the defendant had any substantive right to invoke its protection." *Id*.

In this case, as discussed, both charges against Gilliam for CSC-I were within the period of limitations if filed by AM's twenty-first birthday in 2009, and the Legislature amended MCL 767.24 during that period, in 2001, 2001 PA 6. Because the sexual assaults on AM were not already time-barred when the Legislature extended the statute of limitations in 2001, Gilliam would be unsuccessful in a challenge to MCL 767.24 as impermissible ex post facto legislation. MCL 767.24 did not revive a prosecution that was already barred by a statute of limitations, and, therefore, the prosecutor could charge Gilliam as she did, on January 28, 2021. See *Stogner v California*, 539 US 607, 632-633; 123 S Ct 2446; 156 L Ed 2d 544 (2003); *United States v Knipp*, 963 F2d 839, 844 (CA 6, 1992).[1]

## B. DUE PROCESS

Perhaps because an ex post facto challenge to MCL 767.24 would fail, Gilliam takes the position that MCL 767.24 is instead unconstitutional because it violates his due-process rights. But this argument is also unavailing.

Both the United States and Michigan Constitutions state that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. In *Dowling v United States*, 493 US 342, 353; 110 S Ct 668; 107 L Ed 2d 708 (1990) (quotation marks and citation omitted), the United States Supreme Court ruled that reviving a lapsed prosecution may violate the "fundamental fairness" component of the Due Process Clause if it "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community sense of fair play and decency."

> As we said in *United States v Ewell*, [383 US 116, 120, 122; 86 S Ct 773; 15 L Ed 2d 627 (1966)], "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they "are made for the repose of society and

---

[1] Decisions of lower federal courts are not binding on state courts but may be considered for their persuasiveness. *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019).

the protection of those who may (during the limitation) . . . have lost their means of defence." *Public Schools v Walker*, 9 Wall 282, 288; 19 L Ed 576 (1870). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced. [*United States v Marion*, 404 US 307, 322; 92 S Ct 455; 30 L Ed 2d 468 (1971).]

As the Supreme Court also stated in *Toussie v United States*, 397 US 112, 114-115; 90 S Ct 858; 25 L Ed 2d 156 (1970):

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

"A statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution." *Smith v United States*, 568 US 106, 112; 133 S Ct 714; 184 L Ed 2d 570 (2013).

As these opinions reflect, "an act of limitation is an act of grace in a criminal case and is merely a measure of public policy." *People v Chesebro*, 185 Mich App 412, 419; 463 NW2d 134 (1990).[2] The Legislature, not the judiciary creates statutes of limitations, and it is not within this Court's authority to create a bar for Gilliam's prosecution simply because he believes that it would better serve his interests or those of other defendants.

As our Supreme Court explained in *Russo*, 439 Mich at 596, the Legislature passed the 1987 amendment to lengthen the period in which criminal sexual conduct cases may be filed for sound policy reasons:

> [T]he obvious purpose for lengthening the statute of limitations in sexual crimes involving minors was to provide added protection to such victims. The Senate Bill Analysis observed that frequently the six-year limitation has run by the time the child speaks out, thereby making prosecution impossible. Thus, the legislative purpose in enacting both the original criminal sexual conduct statute and the extended limitations amendment for children was to facilitate the prosecution of such offenses.

---

[2] Although opinions issued before November 1, 1990, are not strictly binding pursuant to MCR 7.215(J)(1), as a published opinion, *Chesebro* nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *People v Darga*, ___ Mich App ___, ___ n 6; ___ NW2d ___ (2023) (Docket No. 363178); slip op at 8-9 n 6.

The *Russo* Court also ruled that the Legislature did not intend only a prospective application of the amendment. *Id*. at 597. As our Supreme Court explained:

> Judge Learned Hand, while on the United States Court of Appeals for the Second Circuit, aptly summarized in *Falter v United States*, 23 F2d 420, 425-426 (CA 2, 1928), . . . our conclusion when he stated:
>
>> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it. [*Russo*, 439 Mich at 597 n 18.]

Gilliam acknowledges the holding in *Russo* but asserts that it fails to account for studies that have reported the different ages at which women disclose childhood sexual abuse. His citation to these studies does not lead us to conclude that MCL 767.24 is unconstitutional. Among other reasons, the largest study that he cites did not involve women living in the United States, no study addressed when males tend to report sexual abuse, and the studies only concern child sexual abuse when the Legislature removed the statute of limitations for all CSC-I charges. Most importantly, however, other than a conclusory statement that a longer period of limitations would be adequate in light of the studies, Gilliam simply fails to explain why the studies suggest that the Legislature wrongly decided to remove the statute of limitations for CSC-I. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

"A facial challenge alleges that [a statute] is unconstitutional 'on its face' because to make a successful facial challenge to the constitutionality of a statute, the challenger must establish that no set of circumstances exists under which the act would be valid." *Bonner v City of Brighton*, 495 Mich 209, 223 n 26; 848 NW2d 380 (2014) (quotation marks, citation, and brackets omitted). Gilliam cites another study in which he argues that mock jurors favored fictional victims who reported criminal sexual conduct 25 or 35 years after the assault. Putting aside the question whether such a study is persuasive in light of the fictionalized circumstances surrounding all of its components, Gilliam fails to explain how this reporting difference balances against the legitimate legislative interest in protecting delayed reporters of sexual abuse and to hold perpetrators accountable for the most serious assaults involving CSC-I. His argument also ignores that, to survive a facial challenge, he must show that the legislative judgment is so arbitrary or irrational that there is no circumstance in which it can be fairly applied. *Andary v USAA Cas Ins Co*, 512 Mich 207, 265; ___ NW2d ___ (2023). Here, that is not the case.

Gilliam argues that the fundamental right to prepare and present a defense is infringed by the Legislature's decision to permit charges for CSC-I at any time. He explains that evidence can be lost or degrade, and witnesses may die or forget. However, this problem impacts all evidence in older cases, whether sought by the prosecution or the defense and can be as favorable or detrimental to a prosecutor as it is to a defendant. Further, as discussed, our courts have already

held that there is no fundamental unfairness to a defendant in cases involving charges for which a prior limitations period did not already act as a bar. Indeed, even if we were to read Gilliam's argument as showing that a lack of a statutory limitations period could be unconstitutional in *some* cases, this would still be insufficient to show that the statute is facially unconstitutional. See *Council of Orgs & Others for Ed About Parochaid, Inc v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997).

We also hold that Gilliam's claim that MCL 767.24(1)(a) is unconstitutional as applied to him is unavailing. As noted, "an act of limitation is an act of grace in a criminal case and is merely a measure of public policy." *Chesebro*, 185 Mich App at 419. As in *Chesebro*, "[d]efendant did not acquire a vested right in a statute of limitations defense until the period in fact expired." *Id*. at 420. Gilliam was not charged with any crime that was already barred when 2001 PA 6 was passed, and he, therefore, cannot show that its passage impacted any substantive rights. As in *Chesebro*, this is a procedural matter under these facts and "not a rule of substantive law." *Id*. at 419. Accordingly, Gilliam cannot show that 2001 PA 6 impacted his substantive due-process rights.

Even if Gilliam had established a " 'present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action," his proffered showing is insufficient to sustain his claim that the delay in charging him caused him actual prejudice. *Bonner*, 495 Mich at 223 n 27, quoting *Village of Euclid, Ohio v Ambler Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926). Gilliam states that he does not have photographs of the interior of the house at the time that the crimes were committed, but AM's mother and Gilliam still lived in the house at the time of trial, photos were introduced of the house, and AM's mother testified that no structural changes were made to the house in the years following the alleged assaults. Gilliam also claims that AM's employment records from the time that the crimes occurred could have impeached allegations that he sexually assaulted AM on weekends when her mother was at work, but those records "were likely lost to time." By using the word "likely," Gilliam implicitly concedes that he did not confirm whether her work records were actually "lost to time," so it does not show that Gilliam was actually prejudiced.

For these reasons, Gilliam is not entitled to any relief because MCL 767.24(1)(a) is not unconstitutional on its face or as applied to him.

III. CONSTITUTIONALITY OF STATUTORY OTHER ACTS, MCL 768.27b

Gilliam also argues that MCL 768.27b is unconstitutional because it allows for the admission of conduct otherwise barred by the statute of limitations. We disagree.

MCL 768.27b provides, in relevant part:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

* * *

(4) Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section unless the court determines that 1 or more of the following apply:

(a) The act was a sexual assault that was reported to law enforcement within 5 years of the date of the sexual assault.

(b) The act was a sexual assault and a sexual assault evidence kit was collected.

(c) The act was a sexual assault and the testing of evidence connected to the assault resulted in a DNA identification profile that is associated with the defendant.

(d) Admitting the evidence is in the interest of justice.

Gilliam argues that MCL 768.27b is unconstitutional for the same reasons that MCL 767.24 is unconstitutional. Because MCL 767.24 is not unconstitutional as already explained, this argument is not persuasive.

He further asserts that "[b]ecause MCL 768.27b lacks a forward moving temporal element, it creates the same problem that the lack of statute of limitations on 1st degree criminal sexual conduct charges does." As discussed, a statute of limitations does not violate a defendant's due-process rights when the statute is extended during a period in which the defendant could be charged. See *Russo*, 439 Mich at 593. This Court has also held that the mere passage of time between the commission of a crime and the arrest does not amount to a denial of due process absent a showing of actual prejudice due to the delay. See *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009). Moreover, and contrary to Gilliam's assertions, MCL 768.27b does contain a forward moving temporal element in that, under Subsection (4), evidence of acts that are more than 10 years old are only admissible under specific circumstances. And because Gilliam does not further elaborate on his assertion that MCL 768.27b is unconstitutional, he has not properly presented his claim on appeal. See *Payne*, 285 Mich App at 195.[3]

---

[3] Despite the murkiness of Gilliam's claim regarding MCL 768.27b, we can nonetheless conclude that even if he had elaborated on his constitutional claim and it were viable, he cannot demonstrate prejudice. The 27b evidence in this case (i.e., acts that would qualify as domestic violence or sexual assault, but not sex acts against a minor) is comparatively limited when considered against the evidence properly admitted under 27a, as discussed below (i.e., AM's testimony regarding other instances of CSC-I, or all of HS's testimony). Failure to demonstrate prejudice provides an additional basis for rejecting Gilliam's claimed error.

## IV. ADMISSIBILITY OF STATUTORY OTHER-ACTS EVIDENCE

Gilliam last argues that the trial court erroneously admitted evidence regarding his uncharged sexual assaults of AM and evidence of his prior conviction of the sexual assault of another child victim, HS. We disagree.

"The admissibility of other-acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009).

MCL 768.27a provides, in relevant part:

> (1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

To reiterate, MCL 768.27b provides:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

MCL 768.27a(1) and MCL 768.27b(1) are a statutory carveouts to the Michigan Rules of Evidence. Like MRE 404(b), they permit the prosecution to introduce evidence of a defendant's other bad acts. See MCL 768.27a(1); MCL 768.27b(1). However, while MRE 404(b) only permits other-acts evidence for nonpropensity purposes, MCL 768.27a(1) and 27b(1) allow the admission of other instances of sexual misconduct for any relevant purpose. This is because, as our Supreme Court has noted, "the reasons for enacting MCL 768.27a were . . . to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend." *People v Watkins*, 491 Mich 450, 476; 818 NW2d 296 (2012). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[4] "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Our Supreme Court has observed that a defendant's propensity to commit a crime makes it more probable that he committed the charged offense. *Watkins*, 491 Mich at 470.

---

[4] The Michigan Rules of Evidence were recently amended, effective January 1, 2024. We rely on the language of MRE 401 as it existed at the time of the trial court's decision on the other-acts evidence.

Gilliam concedes that the other-acts evidence introduced by the prosecutor would be admissible because it is "probative for grooming and propensity" under MCL 768.27b, but he claims that the trial court failed to analyze the evidence under MRE 403.

The record however reflects that the trial court considered both the relevance of the evidence and whether its probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Although the trial court discussed both the evidence regarding HS and the evidence of other sexual assaults on AM at the same time, the trial court correctly assessed the evidence under MRE 403. Specifically, trial court found evidence of Gilliam's conduct toward both HS and AM relevant, and it also ruled that, in light of the fact that "the evidence heavily relies on the testimony of a victim without supporting evidence," the probative value of the evidence as to both witnesses outweighed the danger of unfair prejudice. The trial court noted that the evidence would be prejudicial to Gilliam, but concluded that, because Gilliam would presumably challenge the veracity of the victim, evidence of his other conduct toward another child, HS, and toward AM, both as a child and as an adult, was "vital" to the prosecution's case.

At trial, defense counsel acknowledged the other-acts evidence but took the position that AM fabricated her claims of sexual abuse by Gilliam. During his closing argument, defense counsel suggested AM made up the sexual abuse to gain sympathy and support from her boyfriend. Defense counsel also pointed to the lack of supporting evidence such as medical or counseling records, a disclosure to a friend, school counselor, boyfriend, or coworker, or a confession by Gilliam.

The remarks demonstrate precisely why the Legislature made the policy decision to permit the introduction of other-acts evidence in cases involving sexual assaults and domestic violence. See *Cameron*, 291 Mich App at 610.[5] "[T]his Court has previously acknowledged that the Michigan Legislature intended to allow juries the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords." *Id.* (quotation marks and citation omitted). Gilliam was free to argue to the jury that the other-acts evidence merely muddied the waters, but the trial court did not abuse its discretion by admitting the evidence of his conviction for his conduct toward HS and his uncharged conduct toward AM because it was highly probative to show his propensity to sexually assault minor girls and his propensity to sexually victimize someone living with the same family or household.

Contrary to Gilliam's arguments, the other-acts evidence did not cause confusion regarding the charged conduct. AM clearly testified that Gilliam sexually assaulted her when she was 12 years old and when she was between 13 and 16 years old. Further, the prosecutor and trial court emphasized to the jury which facts were necessary to prove the charges, including the specific ages at which the incidents had to have occurred. Evidence of Gilliam's apparent pattern of inserting himself into a family like HS's in order to sexually abuse one child was, although prejudicial,

---

[5] See also MCL 750.520h, which states that "[t]he testimony of a victim need not be corroborated in prosecutions under" MCL 750.520b to MCL 750.520g.

-11-

highly probative to show that Gilliam did the same thing upon meeting AM and her mother when AM was about the same age as HS.

The evidence of Gilliam's predatory behavior was plainly prejudicial to him, but its probative value far outweighed the risk of unfair prejudice in light of AM's understandable delay in reporting, defense counsel's argument that AM was lying, and Gilliam's and LG's denial of any wrongdoing by Gilliam. The trial court did not abuse its discretion by admitting the evidence under MCL 786.27a, MCL 768.27b, and MRE 403.

We affirm.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado