*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES RAY ALLEN,

Defendant-Appellant.

UNPUBLISHED
January 28, 2026
8:41 AM

No. 364547
Wayne Circuit Court
LC No. 19-004396-01-FC

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

A jury convicted defendant, James Ray Allen, of numerous crimes following a drive-by shooting in Detroit. He raises several claims on appeal, including alleged improper witness identifications, misjoinder, a violation of double jeopardy, the propriety of a search warrant, and ineffective assistance of counsel. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In May 2019, Myron Simmons ("Simmons") and his half-brother, Bruce Haley II ("Haley, Jr."), visited Shermeca Haley's ("Shermeca") home on Asbury Park in Detroit. The two encountered a man in a gold Nissan, with whom Simmons exchanged words; the man fired a gun at Simmons, injuring him in the leg.

Several witnesses identified defendant as the shooter. Simmons and Haley, Jr., picked defendant from a photographic lineup. Shermeca also identified defendant at the time of trial as the shooter, testifying that she knew him previously from when he used to live near her on Ashbury Park and that he came by her home and apologized to her for the shooting.

Also notable for this appeal is the search of 9301 Heyden Street, a house linked to defendant after police observed defendant sitting in a gold Nissan that matched the description of the car involved in this shooting outside the house. Police searched the home pursuant to a search warrant and recovered two handguns and ammunition. One of the handguns was not operable at the time it was found. The second handgun was registered to a woman with whom defendant had a romantic relationship. Because no bullets or shell casings were recovered from this shooting,

-1-

the handguns and ammunition were not directly connected to this shooting through physical evidence.

A jury convicted defendant of assault with intent to cause great bodily harm less than murder (AWIGBH), MCL 750.84; carrying a concealed weapon, MCL 750.227; carrying a weapon with unlawful intent, MCL 750.226; two counts of felon in possession of a firearm, MCL 750.224f; two counts of felon in possession of ammunition, MCL 750.224f(6); and six counts of carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b; but acquitted him of assault with intent to murder, MCL 750.83, and an additional count of felony-firearm, second offense. The trial court sentenced defendant to first concurrently serve six, five-year terms for felony-firearm, second offense, and then to serve concurrent terms of 7 to 20 years for AWIGBH (enhanced as a fourth-offense habitual offender under MCL 769.12) and four terms of 1 to 5 years on the remaining weapons convictions.

Defendant now appeals.

## II. WITNESS IDENTIFICATION

We first address several issues concerning witnesses' identification of defendant as the shooting's perpetrator.[1]

### A. IMPERMISSIBLY SUGGESTIVE PRETRIAL IDENTIFICATION PROCEDURE

Defendant contends the trial court erred in denying his motion to suppress Simmons's and Haley, Jr.'s identifications as being the product of an impermissibly suggestive pretrial identification procedure. We disagree.

A pretrial identification procedure can violate a defendant's right to due process if it was so impermissibly suggestive in light of the totality of the circumstances such that it led to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), overruled in part on other grounds by *People v Hickman*, 470 Mich 602 (2004). The burden is on the defendant to prove the identification procedure was impermissibly suggestive, *id*.; upon satisfaction of that threshold requirement, a court must determine—through a so-called *Wade* hearing—whether the witness had an independent basis to identify the defendant in court, *People v Gray*, 457 Mich 107, 114-115; 577 NW2d 92 (1998); see *United States v Wade*, 388 US 218, 242; 87 S Ct 1926; 18 L Ed 2d 1149 (1967). If there is clear and convincing evidence that the witness identified the defendant on some basis other than the improper identification procedure used, the identification evidence need not be excluded. *People v Kachar*, 400 Mich 78, 91; 252 NW2d 807 (1977).

After an evidentiary hearing, the trial court found that the lineup procedure used in this case was not impermissibly suggestive. It noted that while there were some photographs that stood

---

[1] This Court granted defendant's motion to withdraw Issue V of his brief on appeal, concerning a witness's alleged hearsay statements. *People v Allen*, unpublished order of the Court of Appeals, entered August 12, 2025 (Docket No. 364547). Therefore, we do not address that issue.

out from the description of the suspect, the photographic array did not highlight defendant and thus the discrepancies between the photographs did not lead to a likelihood of misidentification. This Court reviews a trial court's suppression decision for clear error, *People v Williams*, 244 Mich App 533, 537; 624 NW2d 575 (2001), and whether it comported with due process de novo, *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020).

Despite the apparent distinctions between some of the photographs, we cannot say that the trial court erred in ruling that the array as a whole did not single out defendant or cause his photograph to stand out to Simmons and Haley, Jr. The photo array used by the detective contained eight photographs, which were all separate, and Simmons and Haley, Jr., were told that the person who did it may or may not be included in the array. At trial, both Simmons and Haley, Jr., denied having discussed the photo array amongst themselves prior to making their independent identifications. The detective who produced the photo array also explained that while the software program the police department used to select photographs was not properly working when he prepared the lineup, he still tried to find photographs that were similar to those of the suspect's description. To do this, the detective entered defendant's photograph into the system and it produced the photographs that he could select from to use in the array. The trial court correctly recognized that some photos included were dissimilar to defendant, but also noted that the most unique photos were not of defendant and therefore did not stand out in a manner to suggest the identification of defendant. Thus, defendant has not shown that the trial court clearly erred with regard to its findings on the similarities among the photographs.

For these reasons, the trial court did not err in finding that the procedures used in this case were not unduly suggestive to support suppressing the identifications made by Simmons and Haley, Jr.

## B. INEFFECTIVE ASSISTANCE FOR FAILING TO CALL AN IDENTIFICATION EXPERT

Defendant further argues that his trial counsel was ineffective for not (1) offering an expert witness to support his motion to suppress the identifications made by Simmons and Haley, Jr., or (2) calling an expert witness to testify at trial to highlight for the jury the problems with the identifications made by Simmons and Haley, Jr. Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews any factual findings for clear error and reviews de novo questions of constitutional law. *Id.* We hold defendant has not established his counsel was ineffective for these alleged failures.

Key to defendant's position is an affidavit from Dr. Colleen Seifert. Her comprehensive affidavit explains how specific factors affect eyewitness memory generally, and how she believes the factors impacted the identifications of defendant specifically. She described multiple factors that called the identifications made into question, including (1) the witnesses saw the suspect only once; (2) there was a delay before they were asked to identity the suspect; (3) Bruce Haley, Sr., may have contaminated Simmons's and Haley, Jr.'s memories; (4) there were problems with the lineup procedures followed, including not using another officer to show the photographs to the witnesses, an unfair lineup composition, incomplete instructions to the witnesses regarding making an identification, not using different identification procedures for Simmons and Haley, Jr., due to their familial relationship, and failure to document how confident the witnesses were when making

an identification; and (5) not properly informing the jury of the general overall inaccuracy of eyewitness memory.

Although defense counsel could have presented Dr. Seifert as an expert witness to show the shortcomings in the identifications made through the use of the photographic lineup, we cannot conclude that it is reasonably probable that her testimony would have changed the outcome of this trial. *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022). Through the examination of the witnesses and the arguments made at trial, the jury was generally made aware that there were shortcomings with the identifications and thus her testimony would not have aided the jury much in this regard; notably, defendant's trial counsel asked both Simmons and Haley, Jr. about many of the same issues identified by Dr. Seifert. Nor did the jury need special assistance to understand the problems with witnesses recalling facts accurately. And even if otherwise, we cannot conclude it is reasonably probable that Dr. Seifert's testimony would have made a difference in the trial's outcome given testimony that she does not find problematic—Shermeca's identification of defendant as the shooter following his apology to her for shooting Haley, Jr.[2]

In sum, defendant fails to establish that the trial court clearly erred in finding that defense counsel was not ineffective for failing to call an expert witness in eyewitness identifications as unnecessary and that it was not reasonably probable that the failure would have affected the trial's outcome. *Id.*; *LeBlanc*, 465 Mich at 579. And for the same reasons, Dr. Seifert's testimony was not necessary for the trial court to determine the admissibility of Simmons's and Haley, Jr.'s identifications of defendant during the evidentiary hearing, and defendant has failed to show ineffective assistance on that basis.

## C. FIRST-TIME-IN-COURT IDENTIFICATION

Defendant next argues that Shermeca was impermissibly allowed to identify defendant for the first time at trial. Although he failed to preserve this issue by objecting at trial on the same ground raised on appeal, thus rendering it subject to plain error review, *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), he additionally claims that his counsel was ineffective for not objecting to her testimony, preserving that part of this issue for appellate review, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). We conclude that plain error did not occur and defendant cannot show that his counsel was ineffective.

Where an issue, either constitutional or nonconstitutional, was not properly preserved in the trial court, an appellate court will only reverse where the defendant shows that a plain error (either clear or obvious) affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597

---

[2] Defendant also raised this issue in a motion to remand with this Court, which a previous panel denied without prejudice to this panel "determining that remand is necessary." *People v Allen*, unpublished order of the Court of Appeals, entered April 22, 2025 (Docket No. 364547). Defendant has not shown that further factual development is necessary for this Court to properly resolve this issue as discussed in text, see *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007), and thus there is no reason to now grant defendant's motion to remand to hold an evidentiary hearing.

NW2d 130 (1999). The defendant has the burden of demonstrating that he was prejudiced by the error, i.e., that the outcome was affected. *Id*. The reviewing court, in its discretion, should not reverse unless it concludes that the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

A pretrial identification procedure can violate a defendant's right to due process if it was so impermissibly suggestive in light of the totality of the circumstances, that it led to a substantial likelihood of misidentification. *Kurylczyk*, 443 Mich at 302. Recently, a majority of our Supreme Court held that a first-time-in-court identification obtained by the prosecution also implicates a defendant's due-process rights in the same manner as a pretrial identification procedure that is unduly suggestive. *People v Posey*, 512 Mich 317, 339; 1 NW3d 101 (2023) (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). The Supreme Court adopted the same test for reviewing unduly suggestive pretrial identification procedures. See *Posey*, 512 Mich at 339-340 (opinion by BOLDEN, J.), citing *Gray*, 457 Mich at 116; *Kachar*, 400 Mich at 95-96; *id*. at 361(CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). *Posey* further explains that it generally is never necessary for a prosecutor to ask a witness to identify a defendant for the first time during a trial, when the state can always use a nonsuggestive identification procedure or prove identity without asking the witness to identify the defendant in the courtroom. *Posey*, 512 Mich at 338-339 n 6 (opinion by BOLDEN, J.); *id*. at 361, 367 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment).

Although *Posey*, decided after defendant's trial, supports his argument that plain error may have occurred here, reversal is not required. Even if we agreed with defendant that asking Shermeca to identify him in court for the first time was error under *Posey*, this Court must still determine if Shermeca had an independent basis for identifying him. This determination is generally factual in nature, viewing the validity of the victim's in-court identification under the " 'totality of the circumstances.' " *Gray*, 457 Mich at 115, quoting *Neil v Biggers*, 409 US 188, 199; 93 S Ct 375; 34 L Ed 2d 401 (1972). Courts making the independent-basis determination should consider eight factors:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the alleged criminal act.

3. Length of time between the offense and the disputed identification. . . .

4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. . . . [T]he nature of the alleged offense and the physical and psychological state of the victim. In *critical situations* perception will become distorted and any *strong* emotion (as opposed to mildly emotional experiences) will affect not only what and how much we *perceive*, but also will affect our *memory* of what occurred.

Factors such as *fatigue, nervous exhaustion, alcohol and drugs*, and age and intelligence of the witness are obviously relevant.

8. Any idiosyncratic or special features of defendant. [*Gray*, 457 Mich at 115-116, quoting *Kachar*, 400 Mich at 95-96 (quotation marks and citations omitted; emphasis, omissions, and alterations in original).]

If an initial identification of a witness was tentative, it is possible that subsequent, more certain identifications may indicate that impermissibly suggestive law enforcement procedures were utilized. *Gray*, 457 Mich at 112. The prosecution has the burden of proving an independent basis by clear and convincing evidence. *Id*. at 115.

On our review of the record, we hold the trial court would not have excluded Shermeca's in-court identification of defendant because she had an independent basis for identifying defendant even if counsel objected. Her identification differed from those made by Haley, Jr., and Simmons—Shermeca recognized defendant because he stayed (or lived) near her, and she also had a second encounter with defendant shortly after the shooting. In that instance, defendant approached her as she was taking out her trash. Those circumstances gave her an even greater opportunity to view defendant, likely from a closer position, to verify his identity. Given both her previous observations of defendant, along with this second encounter with him, the record supports Shermeca having an independent basis for identifying defendant.

For these reasons, defendant has not shown that plain error occurred that affected his substantial rights. *Carines*, 460 Mich at 763. And defendant cannot establish ineffective assistance of counsel because any objection would have been futile, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), and there is no reasonable probability it would have changed the result of the trial, *Leffew*, 508 Mich at 637. Nor is there a need for this Court to grant defendant's motion to remand to hold an evidentiary hearing when he has not shown that any further factual development is necessary for this Court to properly resolve this issue. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

## III. JOINDER

We next address the trial court's denial of defendant's motion to sever his shooting and weapons charges under MCR 6.120. On abuse of discretion review, we discern no error requiring reversal. *People v Breidenbach*, 489 Mich 1, 14-15; 798 NW2d 738 (2011).

Under MCR 6.120(A), the prosecutor is permitted to charge a single defendant with more than one offense to be tried in a single trial. MCR 6.120(B) and (C) address when separate trials are required where there is more than one charge pending against the same defendant:

(B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

(C) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

Defendant has not shown that the trial court abused its discretion by denying his motion to sever the charges. Under MCR 6.120(B)(1)(b), it is apparent that the charges from both incidents involved a series of connected acts. The prosecutor explained that even though the weapons recovered from the search could not be conclusively shown to have been used in this shooting, the results of the search showed that defendant had access to at least one gun at the time of this shooting. The police conducted the search of the home in relation to the investigation of this shooting. Therefore, the prosecutor showed that these two incidents were part of a series of connected acts.[3]

---

[3] Defendant relies on *People v Ritchie*, 85 Mich App 463, 468-472; 271 NW2d 276 (1978), to argue that combining the two incidents in this case allowed the prosecutor to enter evidence that

Nor has defendant demonstrated that even if separate trials were ordered, the juries would not have heard evidence of the other case. Given the overlap between the two, it seems apparent that the court would have allowed in evidence of each case in the other case's trial—defendant's access to guns was evidence that helped prove that he was the one who shot Simmons, even if the police could not show that either of the guns seized was used to shoot Simmons, and the prosecutor could have offered evidence of the shooting to prove that defendant possessed weapons that were owned or stored in the home, even though one gun was registered to a woman with whom defendant was romantically involved and the other weapon was inoperable when it was found. Defendant thus cannot establish prejudice under MCR 6.120(B)(2).

For these reasons, the trial court did not abuse its discretion when it allowed the prosecutor to try defendant in one trial for the shooting and weapons charges.

## IV. DOUBLE JEOPARDY

Defendant next argues that because his first trial ended in a mistrial, double jeopardy barred his second trial. We disagree.

Under both the federal and Michigan constitutions, a defendant is prohibited from twice being placed in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Echavarria*, 233 Mich App 356, 362; 592 NW2d 737 (1999). It is well established, however, that a retrial is not barred on double-jeopardy grounds where the defendant requests or consents to a mistrial unless the prosecutor engaged in conduct that was intended to provoke or goad the defendant into requesting a mistrial. *People v Lett*, 466 Mich 206, 215; 644 NW2d 743 (2002). In addition, a retrial is always permitted when the mistrial is caused by manifest necessity. *Id.*

> Manifest necessity is not a precisely defined concept and must be determined case by case. Manifest necessity "appears to refer to the existence of sufficiently compelling circumstances that would otherwise deprive the defendant of a fair trial or make its completion impossible." Therefore, "[a] trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." [*Echavarria*, 233 Mich App at 363 (citations omitted).]

During the first trial, the trial court declared a mistrial because Haley, Sr., volunteered a statement, unresponsive to the question posed by defense counsel on cross-examination, that defendant's mother told Haley, Sr., that defendant was responsible for this shooting. Though the prosecutor had previously asked Haley, Sr., about his contact with defendant's mother, the prosecutor specifically instructed him not to repeat what defendant's mother allegedly said. Under these circumstances, the trial court found that the prosecutor was not responsible for Haley, Sr.'s extraneous statement and instead granted the mistrial on the ground of manifest necessity.

---

the jury would not have been able to consider if separate trials were held. We are not persuaded, not least of which because that case did not involve MCR 6.120.

Defendant argues that double jeopardy barred his second trial because the prosecutor goaded him into moving for a mistrial, or it was caused by prosecutorial misconduct. Because defendant did not raise double jeopardy as a bar to his second trial at any point below, this argument is unpreserved, see *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015); *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005), and we thus review it for plain error affecting his substantial rights, *Carines*, 460 Mich at 763. Through this discerning lens, defendant has not established plain error requiring reversal.

Defendant's sole argument is that prosecutorial misconduct occurred in this case, and he urges this Court to find that the prosecutor's conduct caused the mistrial, even if the prosecutor did not intend to do so. But the trial court rejected any claim that the prosecutor engaged in misconduct that brought about the circumstances that caused the court to grant a mistrial and instead concluded that Haley, Sr., was solely responsible for the volunteered comment about defendant's mother believing that defendant committed this shooting. The record amply supports this conclusion.[4]

For this reason, defendant has not shown that plain error occurred on the ground that prosecutorial misconduct caused the mistrial.

## V. SEARCH WARRANT

Defendant argues that the trial court erred in denying his motion to suppress the evidence obtained during the search of 9301 Heyden Street. The trial court concluded that the affidavit supporting the search warrant appropriately demonstrated probable cause by linking defendant— the suspect of the shooting—to the gold Nissan tied to the shooting and to the house to be searched. On clear error review, *People v James*, 327 Mich App 79, 90; 932 NW2d 248 (2019), we reject defendant's argument that the affidavit did not establish a sufficient nexus to the house.

"Probable cause exists when a person of reasonable caution would be justified in concluding that evidence of criminal conduct could be found in a stated place to be searched." *People v Stumpf*, 196 Mich App 218, 227; 492 NW2d 795 (1992). When reviewing a decision to issue a search warrant, the reviewing court must read the search warrant and the affidavit in a common-sense and realistic manner. *People v Russo*, 439 Mich 584, 603-604; 487 NW2d 698 (1992). Deference is afforded the magistrate's decision because of the preference for searches conducted pursuant to warrants. *Id*. A reviewing court must only be sure that there is a substantial basis for the magistrate's conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place before granting the warrant. *Id*. And in making that determination, a reviewing court may rely on the experience of the officer conducting the investigation to support the finding of probable cause. See *People v Darwich*, 226 Mich App 635,

---

[4] Because we discern no plain error regarding the trial court's determination that the mistrial resulted from a cause unrelated to the prosecutor's conduct, we need not address whether a lesser standard of proof is required to prove a double-jeopardy violation under the state constitution involving prosecutorial misconduct, which our Supreme Court is presently considering. See *People v Jennings*, ___ Mich ___; 19 NW3d 329 (2025).

638-640; 575 NW2d 44 (1997). This Court evaluates probable cause at the time of the warrant's issue. *Stumpf*, 196 Mich App at 227.

The affidavit at issue first set forth that defendant was a suspect in this shooting. As explained by Detective Christie in his affidavit, a firearm is a durable good and it is common for criminals to retain firearms, even when used to commit a crime. The affidavit also explains defendant's connection to the house—he was known to reside there and was observed inside the gold Nissan parked in front of the house. And it noted defendant's prior brandishing of a handgun to a neighbor. Furthermore, because a firearm is a durable good, the six-day delay in this case was not enough to prove that the information the police had connecting defendant to this shooting was too stale to support issuing a search warrant for his residence. As Detective Christie explained in his affidavit, a firearm is the type of item that may not be quickly disposed of after it is used in a crime. These facts support concluding that the information in the affidavit was not too stale to support issuing the warrant. See *Russo*, 439 Mich at 605-606. On this basis, the search warrant adequately demonstrated probable cause given there was a fair probability that evidence of a crime would be found at 9301 Heyden Street.

For these reasons, defendant has not shown that the trial court erred by denying his motion to suppress the evidence obtained during the search of 9301 Heyden Street.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to present an alibi defense at his second trial. Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *LeBlanc*, 465 Mich at 579. This Court reviews any factual findings for clear error and reviews de novo questions of constitutional law. *Id*. We agree with the trial court that defendant has not supported his claim of ineffective assistance of counsel.

The trial court held an evidentiary hearing on defendant's motion on this issue. At issue is defendant's girlfriend at the time of this shooting, Chenae Cannon. Testimony from the evidentiary hearing established that Cannon was willing to support an alibi defense and testify that defendant was at her place of employment in Livonia at the time of this shooting. Trial counsel testified that defendant did not mention Cannon or having an alibi. Although she was aware of defendant's first attorney filing a notice of an alibi defense, she did not investigate the defense.

To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves considering " 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Leffew*, 508 Mich at 637, quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must also demonstrate that he was prejudiced by counsel's error. *Leffew*, 508 Mich at 637. To establish prejudice, defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id*., quoting *Strickland*, 466 US at 694. "Reasonable probability means 'a probability sufficient to undermine confidence in the outcome.' " *Leffew*, 508 Mich at 637, quoting *Strickland*, 466 US at 694.

-10-

Effective assistance of counsel is presumed, and the defendant bears a heavy burden in proving otherwise. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). To prove that counsel's performance was deficient, defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court is reluctant to substitute its judgment for that of trial counsel with respect to matters of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Counsel will only be found ineffective on the basis of strategic decisions if the strategy employed was not sound or reasonable. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The failure to advance a meritless argument or raise a futile objection does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201. Furthermore, while many of counsel's decisions are generally considered to be strategically based, and, therefore, are given deference, counsel is required to conduct a complete investigation of matters that could reasonably impact the defendant's case. *People v Trakhtenberg*, 493 Mich 38, 52-53; 826 NW2d 136 (2012). The burden is on the defendant to produce factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

In order for defendant to show that Cannon was an alibi witness, her testimony needed to support finding that defendant was somewhere else, other than the crime scene, when this crime occurred. *People v Gillman*, 66 Mich App 419, 424; 239 NW2d 396 (1976). Contrary to the trial court's reasoning in denying defendant's motion, defendant was not required to prove that the failure to call a witness deprived him of a substantial defense. See *People v Jurewicz*, 506 Mich 914, 915 (2020) (rejecting the "substantial defense" requirement and instead reiterating that a defendant establish deficient performance and a reasonable probability of a different outcome). That erroneous reasoning, however, does not merit relief because the trial court nonetheless correctly concluded that defendant failed to prove deficient performance.

In rejecting defendant's claim of ineffective assistance of counsel, the trial court found that trial counsel was aware of the alibi notice, but that defendant was not interested in pursuing the alibi defense because he did not tell her about Cannon or having an alibi. She also knew that defendant's prior counsel had not relied on the alibi defense during defendant's first trial, demonstrating it likely was no longer the favored strategy. Deciding whether to pursue an alibi defense was a strategic decision for trial counsel to make after consulting with defendant, and these facts establish it was objectively reasonable for trial counsel not to spend time and resources on investigating an alibi defense or meeting with Cannon. *Trakhtenberg*, 493 Mich at 52-53. Defendant therefore has not shown that counsel's performance fell below an objective standard of reasonableness. *Id*. at 52.

And even if it was deficient, we alternatively conclude that the trial court did not err in finding that defendant was not prejudiced by trial counsel's decision not to call Cannon as an alibi witness. *LeBlanc*, 465 Mich at 579. Simply, it is not reasonably probable that Cannon's testimony, as defendant's girlfriend at the time of this incident, would have been enough to overcome the prosecutor's evidence, which included identifications by the three eyewitnesses, an incriminating statement defendant made about this shooting involving kids, and Shermeca's testimony that defendant apologized to her for the shooting.

-11-

The trial court did not err in denying defendant's motion for a new trial on the ground that his counsel was ineffective for not pursuing an alibi defense.

## VII.  CUMULATIVE ERROR

Finally, defendant requests that this Court grant him a new trial, even if no single error alone would support ordering a new trial.  He contends that the cumulative effect of errors supports granting a new trial.  We disagree.

Although a single error in a trial may not necessarily provide a basis for granting a new trial, it is possible that the cumulative effect of multiple minor errors may add up to error requiring reversal.  *People v Lowrey*, 342 Mich App 99, 119; 993 NW2d 62 (2022).  The test is whether the cumulative effect of multiple errors deprived the defendant of a fair and impartial trial.  *People v Taylor*, 185 Mich App 1, 10; 460 NW2d 582 (1990).  Each of the errors must be of some consequence and the cumulative effect must undermine confidence in the reliability of the verdict.  *Lowrey*, 342 Mich App at 119.

As discussed, defendant has not shown that multiple errors of consequence occurred.  Therefore, reversal due to cumulative error is not warranted.  *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

## VIII. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock